334 So.2d 43 (1976)
Curtis Charles VON HORN, Appellant,
v.
The STATE of Florida, Appellee.
No. 74-1384.
District Court of Appeal of Florida, Third District.
April 6, 1976.
Rehearing Denied July 6, 1976.
Phillip A. Hubbart, Public Defender and Elliott H. Scherker, Asst. Public Defender, for appellant.
Robert L. Shevin, Atty. Gen., Ira N. Loewy, Asst. Atty. Gen. and Steven Ginsburg, Legal Intern, for appellee.
Before PEARSON, HAVERFIELD and NATHAN, JJ.
PER CURIAM.
The defendant, Curtis Charles Von Horn, was indicted for the first degree murder of one Lois Long, by strangulation with his hands. He was tried by jury, found guilty of first degree murder and sentenced to life imprisonment in the state penitentiary.
The record reflects that at or around midnight on July 9, 1973, officers of the Dade County Public Safety Department were summoned to the scene of a murder at the request of Curtis Charles Von Horn. Von Horn gave his account of the crime to the police officers at the scene, and at 8:10 A.M., on the morning of July 9, 1973, he gave a formal statement at the Public Safety Department. The statement is paraphrased herein as follows:
*44 While working as a security guard for a shoe store on the night of July 8, 1973, Von Horn had been to the Top Banana Store on South Dixie Highway at 121st Street at approximately 10:00 P.M. to buy cigarettes and beer. Lois Long, an employee of Top Banana, was in the store at that time. After making his purchases, Von Horn went back to his place of employment. He observed a Volkswagen drive around the parking lot by the store at about 10:30 P.M. At about 11:05 P.M., he heard a woman scream. He armed himself with a small knife and proceeded toward the store. Approximately 10 feet away, he observed a white male and a black male "bringing Lois out of the store, bodily." Both men were carrying lead pipes, and when Von Horn approached them, he became engaged in a fight with the white male. (Von Horn stated that he could positively identify the the black male.) He was possibly rendered unconscious for a brief time, and upon recovering, found his glasses on the ground, with one lens missing. He then went into the Top Banana Store, picked up a flashlight and some batteries, and attempted to flag down a car.
When the first police officer arrived at the scene, Von Horn gave him this account of the crime. Von Horn's formal statement, which he agreed was given of his own free will, included a detailed description of the two assailants. Von Horn consented to be photographed, fingerprinted and was given photographs to look at. He was able to select one photograph as the black male he said he could identify. Later that same morning, while Von Horn was still at the Public Safety Department, it was determined that he was a suspect rather than a witness-victim, and at about 10:45 Von Horn was advised of his constitutional rights. He executed a waiver of those rights and following more questioning, gave a full confession to the crime.
Prior to trial, Von Horn filed a motion to suppress in the trial court, in which he alleged that the confession was made involuntarily and in violation of his constitutional rights. At the hearing on the motion to suppress, Von Horn testified that the first patrolman arrived on the scene at approximately 12:00 midnight. He gave the patrolman the exculpatory statement about the two supposed assailants who dragged Lois out of the store and then attacked him. Later, when Detective McGowan arrived on the scene, he gave McGowan the same verbal statement. Von Horn was subsequently taken to the Public Safety Department "for further questioning," and was questioned by "approximately about seven of them or eight." He testified that he gave permission for the police to search his car, take his clothes, a blood sample and photographs. He was then asked to look at photographs in a mug file. When asked if he was under arrest at that time, Von Horn stated that he was to be questioned as a witness. He stated that between 12 midnight and 10:45 the next morning when he was advised of his rights, he was required to give about ten statements; he was not asked if he wanted to go home; he was not informed that he could leave and come back to give a statement; he was not allowed to make a phone call; he was not offered anything to eat or drink, and he further stated that he had not slept or eaten since around 6:00 P.M., the evening before. When asked why he confessed, Von Horn stated, "I figured they were keeping me there forever, the way they were treating me." He also stated, "they said they had, I believe ... three witnesses. They were telling me all kinds of things, messing my head up. At the time, I was afraid." When asked if the police knew of his past (a prior arrest for rape), he replied affirmatively that before he confessed, Detective McGowan "was sitting in front of me with the folder." The confession given at approximately 10:45 A.M., was the first time Von Horn admitted perpetrating the crime. All other statements were exculpatory and given as a witness. Inquiry was made as *45 to signing a waiver of (Miranda) rights. Von Horn said he signed "In order to get out of there, I was scared."
At the conclusion of Von Horn's testimony, the State called Detective McGowan, who testified that he arrived at the scene at around 1:30 A.M., at which time he initially interviewed Von Horn. Von Horn gave a brief oral statement that he was a witness to and victim of the crime. McGowan asked Von Horn to go to the station to give a formal statement and to look at photographs. McGowan testified that at around 4:00 or 4:30 A.M., Von Horn was taken in a police car to the Public Safety Department. McGowan arrived at the Public Safety Department at 6:30 A.M., and upon questioning, Von Horn gave the same statement as before but with more details. At 8:10 A.M., a formal statement was taken from Von Horn. It was basically the same as that given at the scene. McGowan stated he had no reason not to believe it. He testified that Von Horn was fingerprinted and photographed "for the purpose of elimination." At approximately 10:45 A.M., Von Horn was advised that he was a suspect. He was advised of his rights and signed a constitutional waiver form. He was questioned again. Detective McGowan stated that Von Horn stuck to his original story at first, but then he started to break down crying and confessed. McGowan testified that Von Horn was not beaten, subjected to physical violence, coerced, threatened or promised reward, and that at some time (although he could not give the exact time or even whether it was before or after the 10:45 confession) he personally brought Von Horn a sandwich and a coke. McGowan later testified that he did not know the last time Von Horn ate or slept before making his confession at 10:45. McGowan stated that before 10:45 Von Horn was not a suspect but he did not advise him that he could leave the building, make a phone call or go home.
The State then called Lt. Fowler who testified that he talked to Von Horn at around 5:00 A.M. to request permission to take his clothing. Permission was given without coercion, physical violence or hope of reward. At that time, Fowler was not aware of Von Horn's background. When he later did become aware of it, Fowler discussed it with McGowan and "I suggested he reinterview him and advise him of his rights." A third detective was called to testify, after which the court determined that argument was not necessary and ruled, "The motion is denied."
During the course of Von Horn's jury trial, following testimony that Von Horn signed the statement taken after the warnings were given, the waiver form was admitted into evidence, and the confession, which he gave at 12:05 P.M., on July 9, 1973, was then read into evidence. In the transcribed confession, Von Horn was readvised of his Miranda rights. He stated that he was willing to answer questions and that he did not desire the presence of an attorney. The officer proceeded to ask Von Horn about the events of July 8, 1973. He stated that he had gone to the Top Banana Store to use the restroom and that while he was doing so, he heard Lois, the woman who worked at the store, ask if he was still inside. He replied that he was and as he prepared to leave the restroom, she came in and "started eyeing me." He then described the events which transpired, including Lois' sexual advances towards him and because of this, he took her outside and "proceeded to strangle her." He then dragged her along the outside wall of the store and "began kicking her, stomping on her, doing everything. I knew from there ... after about five minutes beating on her, then she was dead." He got the flashlight and then observed a Volkswagen going past. Von Horn stated that he went into the store and "grabbed a beer", putting the store keys in his pocket. He "was thinking of an alibi" that he could "make stick." After observing a state trooper drive by, he observed the first police officer on the scene to whom he "proceeded to tell ... the story" which he had "made up," the exculpatory statement.
*46 Von Horn signed the confession at the end and initialled every page. At the close of the statement he agreed that he had made his statement freely and voluntarily. (The detailed account of the murder given by Von Horn in his confession is confirmed by physical and chemical evidence.)
On cross-examination, Detective McGowan stated that the defendant broke down and started crying before he gave the above inculpatory statement. He also agreed that he had testified on deposition that the defendant's first words after he broke down were:
"I had to do it. She was going to tell the police that I had intercourse with her."
The thrust of Von Horn's appeal is a three-pronged attack on the denial of his motion to suppress, and on the admission into evidence of the confession. The first and third points are that the confession was involuntary and, therefore, inadmissible, and that the confession was obtained in violation of Von Horn's rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.
The appellate court will not substitute its judgment for that of the trial court as to the voluntariness of confessions or admissions after the defendant has been advised of his constitutional rights. Barker v. State, Fla.App. 1973, 271 So.2d 790, 792; Phillips v. State, Fla.App. 1973, 284 So.2d 485, 486. A resolution of the issues as to the voluntariness of a confession is a job for the trial court, whose province it is to adjudge the credibility of the witnesses and the weight of the evidence. Barker v. State, supra. Where the record demonstrates that the defendant was informed adequately and fully of his Miranda rights prior to interrogation and made a knowing and intelligent waiver of his right to counsel, it is not error for the trial court to deny a motion to suppress a confession so obtained. See Phillips v. State, supra. Before a confession may be admitted as evidence, the prosecution has the burden of demonstrating that the defendant has been advised of the full range of his constitutional rights, as established in Miranda v. Arizona, supra. Woods v. State, Fla.App. 1968, 211 So.2d 248, 250. Von Horn testified that he signed the confession and initialled each part of the constitutional rights waiver form. We have carefully reviewed all of the circumstances surrounding the giving of the statement and find that there is ample evidence that it was voluntary and that the trial court properly admitted it into evidence before the jury. See Young v. State, Fla. 1962, 140 So.2d 97, 99; Foreman v. State, Fla.App. 1968, 213 So.2d 754. Furthermore, the procedure used by the police officers meets the standards prescribed by the Supreme Court of the United States in Miranda v. Arizona, supra. See Ashley v. State, Fla. 1972, 265 So.2d 685. By his own admission, Von Horn was questioned not as a suspect, but only as a witness-victim until approximately 10:45 A.M. The statements which he gave prior to that time were made in response to questioning "which might normally be expected in the investigation of any crime." Melero v. State, Fla.App. 1975, 306 So.2d 603, 605. This court cannot make a subjective evaluation as to when the police officers should have begun to regard Von Horn as a suspect in light of the above facts.
The evidence shows that Von Horn was neither beaten, nor subjected to physical violence, nor threatened, coerced or promised a reward. Von Horn was afforded a hearing on his motion to suppress out of the presence of the jury. At the conclusion of the hearing, the court denied the motion, and thus made a determination as to its voluntariness. Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908. There was competent, substantial evidence on which the trial court based its denial of the motion to suppress, thus finding voluntariness and compliance with Von Horn's Miranda rights.
*47 Von Horn's second point is that the trial court failed to make a specific finding of voluntariness. In determining this question, we adopt the language of Wilson v. State, Fla. 1974, 304 So.2d 119, 120:
"Under the circumstances advanced for review, we can only conclude that the trial judge correctly determined that the confession was `voluntary' by virtue of his denial of appellant's motion to suppress.
Also, review of the record as a whole in this cause deems it unnecessary to relinquish jurisdiction to the trial court for a specific finding and/or ruling on this issue of voluntariness."
The other points raised on appeal are without merit and will not be discussed.
Accordingly, the judgment of conviction and sentence is affirmed.