437 So.2d 181 (1983)
The STATE of Florida, Appellant,
v.
Jorge ABISLAIMAN, Appellee.
No. 82-1944.
District Court of Appeal of Florida, Third District.
August 16, 1983.
Rehearing Denied September 28, 1983.
*182 Jim Smith, Atty. Gen. and Calvin L. Fox, Asst. Atty. Gen., for appellant.
Bierman, Sonnett, Beiley, Shohat & Sale and Benedict P. Kuehne, Edward R. Shohat, Miami, for appellee.
Before NESBITT, DANIEL S. PEARSON and JORGENSON, JJ.
NESBITT, Judge.
The defendant, Jorge Abislaiman, was charged with carrying a concealed firearm, possession of a controlled substance, and possession of cannabis. We have for review an order granting his motion to suppress evidence.
Abislaiman drove[1] into the emergency room parking lot of Mercy Hospital at 2:30 a.m. on January 21, 1982. He was accompanied by a female. He parked at the end of the lot and remained there for three to five minutes with no one entering or exiting the automobile. Abislaiman's actions were observed via security camera and monitor by Officer Carlos Nieto, an off-duty City of *183 Miami Police Officer, working with security personnel at Mercy Hospital.[2] The hospital's security camera monitoring room, where Nieto was situated, contains equipment allowing for remote control operation of the cameras which are perched upon poles or light standards. His suspicions aroused, Nieto maneuvered the camera facing Abislaiman and activated its zoom lens so that he could see directly into the automobile's windshield. Officer Nieto observed Abislaiman rolling an unidentifiable substance in cigarette paper and then saw him raise his shirt, remove a gun from his waistband, and place it on the floor of the automobile in front of the driver's seat. Nieto then radioed his dispatcher for a marked unit to assist him in a possible arrest. When the other officer arrived, he and Nieto approached Abislaiman's car and asked both occupants to step out. They complied and as Abislaiman was frisked for weapons or shortly thereafter, Nieto reached into the car and located the gun. Abislaiman was then arrested for carrying a concealed firearm. He was read his Miranda rights after which he made certain incriminating statements. Also seized from Abislaiman's vehicle was a small amount of marijuana in a clear plastic bag visible to Officer Nieto as he reached for the revolver and several quaaludes only the wrapper of which, a tissue, was visible at that time. The trial court suppressed all the physical evidence seized from Abislaiman, as well as the inculpatory statements.
We reverse the portion of the trial court's order suppressing the physical evidence. In doing so, we expressly do not reach the issue of whether Officer Nieto's use of the zoom lens camera constituted a search within the ambit of the Fourth Amendment to the United States Constitution or Article I, Section 12 of the Florida Constitution, compare United States v. Taborda, 635 F.2d 131 (2d Cir.1980) (use of telescope constituted a search); United States v. Kim, 415 F. Supp. 1252 (D.Haw. 1976) (use of high-powered telescope constituted a search); and State v. Barnes, 390 So.2d 1243 (Fla. 1st DCA 1980) (use of telescope to confirm that seen with binoculars constituted a search) with Bernstiel v. State, 416 So.2d 827 (Fla. 5th DCA 1982) (use of binoculars to confirm that seen with naked eye did not constitute a search), but hold that Abislaiman had no reasonable expectation of privacy even from such an intrusion as occurred here. See Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).
Because accidents and illnesses occur at all hours, a hospital's emergency room parking lot is one of the few places where one would expect a certain amount of traffic even at 2:30 a.m. Much of this traffic would be medical and ambulance personnel, see Buchanan v. State, 432 So.2d 147 (Fla. 1st DCA 1983) (defendant did not have a reasonable expectation of privacy inside a busy hospital emergency room where medical personnel were constantly walking in and out and where he could have expected to remain only a few hours at most) and some would surely be police officers who, properly on the premises, would have been free to crane their necks or bend over in order to glimpse the interior of Abislaiman's vehicle. See James v. United States, 418 F.2d 1150, 1151, n. 1 (D.C. Cir.1969); but cf. United States v. Ward, 546 F. Supp. 300, 310 (W.D.Ark. 1982) (unusual angle or height of enhanced visual surveillance considered in determining degree of intrusion upon expectation of privacy). Furthermore, Officer Nieto testified as to two recent incidents of violence that had occurred on Mercy Hospital grounds. The hospital certainly has a right to protect its patients, employees, and property by employing reasonable security measures. Thus, any subjective expectation of privacy Abislaiman may have formed while parked in the hospital's lot was simply not one which society is prepared to recognize as reasonable. Katz v. United States, supra (Harlan, J., concurring), adopted, Smith v. *184 Maryland, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979).
Officer Nieto's use of the zoom lens camera was, therefore, not unlawful and he was clearly entitled under Section 901.15(1), Florida Statutes (1981) to arrest Abislaiman, having actually witnessed the latter commit the felony of carrying a concealed firearm, § 790.01(2), Fla. Stat. (1981). The search of the passenger compartment of the vehicle and the examination of the contents of any containers found therein were then justified as contemporaneous incidents of the lawful custodial arrest of Abislaiman, its recent occupant, notwithstanding that he had been removed from the vehicle, New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); State v. Valdes, 423 So.2d 944 (Fla. 3d DCA 1982), that portions of the search may have preceded his formal arrest, Acosta v. State, 431 So.2d 715 (Fla. 3d DCA 1983); Thomas v. State, 395 So.2d 280 (Fla. 3d DCA 1981), and that Officer Nieto in testimony at the suppression hearing characterized one part of the search, conducted with the defendant still at the scene, as an inventory search. State v. Padron, 425 So.2d 644 (Fla. 3d DCA 1983); State v. Valdes, supra. The physical evidence should not have been suppressed.
The trial court suppressed Abislaiman's oral admissions not only as fruit of the poisonous tree, the illegal arrest, but as made without an understanding of the concededly-administered Miranda warnings. The poisonous tree now detoxified, we need not concern ourselves with the first independent ground for suppression, but proceed to the second ground.
It appears from the record that Officer Nieto, who was the only witness to testify at the suppression hearing, was somewhat confused as to whether his fellow officer read Abislaiman his rights in Spanish or English and as to whether Abislaiman answered in Spanish or English. Nieto initially testified that he didn't remember whether the rights were read in English or Spanish. He later responded that the rights were read in Spanish and that he didn't remember whether Abislaiman answered in Spanish or English. Nieto also testified that Abislaiman appeared to understand English but that he made his incriminating statement[3] in Spanish. Although a likely inference from all this confusion is that both Nieto and Abislaiman were bilingual, the trial court found that Nieto just was not credible concerning this particular issue. On this record, we cannot say that the trial court erred in its assessment or in its decision to suppress the oral statements as emanating from one who did not understand his rights. McNamara v. State, 357 So.2d 410 (Fla. 1978); Lane v. State, 353 So.2d 194 (Fla. 3d DCA 1977), cert. denied, 358 So.2d 131 (Fla. 1978); Von Horn v. State, 334 So.2d 43 (Fla. 3d DCA 1976), cert. denied, 341 So.2d 1086 (Fla. 1976). The order under review is, therefore, affirmed in part and reversed in part and the case is remanded for further proceedings consistent with this opinion.
Affirmed in part; reversed in part and remanded.
NOTES
[1] The record does not reveal whether or not Abislaiman owned the automobile he was driving.
[2] Since it was not made an issue in the trial court, the state has conceded for purposes of this appeal that Officer Nieto's activities at all relevant times constituted state action.
[3] Officer Nieto was privy to only one of the statements sought to be suppressed.