Cornelius **FULLBRIGHT**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 9721.

United States Court of Appeals
Tenth Circuit.

April 4, 1968.

Rehearing Denied April 30, 1968.

David C. Shapard, of Shapard & Shapard, Oklahoma City, Okl., for appellant.

John E. Green, Asst. Atty. Gen. (B. Andrew Potter, U. S. Atty., with him on the brief), for appellee.

Before MURRAH, Chief Judge, HILL, Circuit Judge, and CHRISTENSEN, District Judge.

CHRISTENSEN, District Judge.

Appellant and two co-defendants were found guilty in a non-jury trial of violating five sections of the federal Internal Revenue Liquor Laws.[1] Appellant appeals, claiming that his conviction was based upon illegally obtained evidence.

These are the facts without substantial dispute: On the night of April 6, 1967, federal investigators for the Alcohol Tax Unit of the Internal Revenue Service, acting upon information received from an unnamed informant, who they stated was a "reliable" source of information, went upon the farm of one Marzett, a co-defendant of appellant, and took up positions for observation of a house and shed from a distance. With the aid of binoculars, they observed through an open door the three defendants operating a still inside the shed, appellant in particular being recognized. They also watched the defendants load bottles of distilled spirits from the shed into a 1957 Ford automobile, and then saw the Ford leave the premises followed by a 1965 Chevrolet driven by appellant. The investigators followed the two cars for several miles, never losing sight of them, and then stopped and searched the cars and arrested the occupants. During the search, seventy-four gallons of non-taxpaid distilled spirits were found in the Ford. Thereafter, the investigators secured a warrant for search of the Marzett premises, which search took place that same night and revealed two distilleries, 1,400 gallons of mash, other miscellaneous distilling apparatus and eighteen gallons of non-taxpaid distilled spirits.

A motion to suppress all of the evidence was made at a pre-trial hearing and renewed at the trial without avail.

The designated points in appellant's brief are concerned specifically with claimed errors of the trial court relating to informer testimony.[2] We reserve until later further reference to these expressed contentions to discuss a more serious problem only obliquely touched upon in the briefs, but of which point was made in the oral argument.

Appellant's position in its most persuasive light is that the arrests and the search of the automobiles were based upon information gained by the agents through an illegal search while they were trespassers upon the Marzett premises, so that the evidence should be ruled inadmissible under the "poisoned tree" doctrine. The government denies that there was any unreasonable search and asserts that in any event the appellant Fullbright had no standing to object, being without proprietary interest in the Marzett premises.

The definition of an "aggrieved" person is not as limited as appellee would imply. A narrow view of

---

1. 26 U.S.C.A. § 5601(a) (1), (a) (4), (a) (7), § 5604(a) (1), and § 5686(a).

2. "I. Where the Alcohol Tax Unit Investigator received reports several times prior to the search * * * the search without a warrant is inexcusable and the search unreasonable.

"II. The mere statement by an officer that the informant is reliable is a conclusion and is not sufficient to justify a search or a search warrant without further information as to how he received the information and from what source and its reliability."

Rule 41(e) Federal Rules of Criminal Procedure has been rejected and standing has been extended under varying circumstances to those whose rights of privacy have been invaded by searches or seizures directed against them. Under the circumstances of this case the appellant had standing to question the legality of any search of the Marzett premises.[3]

When the investigators made their initial observation, the door to the shed was open and its light was sufficient to reveal what was going on. The extent of the investigators' action at the time was to look.[4] And the use of binoculars did not change the character or admissibility of the evidence or information gained.[5] It has been consistently held that open fields are not protected by the Fourth Amendment.[6] The investigator here did not make a "search" of any papers, house, persons, or effects in the usual sense but rather made distant observations of a house and shed the direct search of which we shall assume would have been constitutionally prohibited without a warrant as being within the "curtilage".[7] If the investigators had physically breached the curtilage there would be little doubt that any observations made therein would have been proscribed.[8] But observations from outside the curtilage of activities within are not generally interdicted by the Constitution. Indeed, to so hold might require passing officers to close their eyes to the commission of felonies on front door steps. The observations from the field sustained in Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898, supra, penetrated the immediate vicinity

**3.** Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, at 362 U.S. pp. 260, 261, 267, 80 S.Ct. 725; Elbel v. United States, 364 F.2d 127 (10th Cir. 1966), cert. denied 385 U.S. 1014, 87 S.Ct. 726, 17 L.Ed.2d 550; Murray v. United States, 351 F.2d 330 (10th Cir. 1965); Villano v. United States, 310 F.2d 680 (10th Cir. 1962); United States v. Miguel, 340 F.2d 812 (2d Cir. 1965). Cf. Sumrall v. United States, 382 F.2d 651 (10th Cir. 1967); Cochran v. United States, 389 F.2d 326 (10th Cir. 1968).

**4.** Cf. Trujillo v. United States, 294 F.2d 583 (10th Cir. 1961); Petteway v. United States, 261 F.2d 53 (4th Cir. 1958); United States v. Strickland, 62 F.Supp. 468 (D.C.S.C.1945).

**5.** United States v. McCall, 243 F.2d 858 (10th Cir. 1957).

**6.** Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898; Care v. United States, 231 F.2d 22 (10th Cir. 1956); McDowell v. United States, 383 F.2d 599 (8th Cir. 1967); Janney v. United States, 206 F.2d 601 (4th Cir. 1953).

In *Hester*, supra, revenue agents concealed themselves fifty to one-hundred yards from a house, saw Hester come from the house, hand a bottle to another man, and arrested them both without a warrant. Speaking of the claim made that there was an illegal search Mr. Justice Holmes for the court wrote:

"The officers had no warrant for search or arrest * * * It is obvious that even if there had been a trespass, the above testimony was not obtained by an illegal search or seizure. The defendant's own acts, and those of his associates, disclosed the jug, the jar, and the bottle * * *.

"It is enough to say that, apart from the justification, the special protection accorded by the Fourth Amendment to the people in their 'persons, houses, papers and effects' is not extended to the open fields * * *."

**7.** "Curtilage" is defined in Webster's New International Dictionary, 3rd Edition, as "A yard within the fence surrounding a house". It has been otherwise defined as "The enclosed space of ground and buildings immediately surrounding a dwelling house." Black's Law Dictionary (Fourth Ed.). The legal definition as will be seen from cases hereafter cited is not so precise but depends also on related circumstances. The term was of special importance at common law since the breaking and entering of a building outside the curtilage did not constitute burglary. Blackstone's Commentaries Book IV, Ch. 16, pp. 224–225 (Lewis' Edition p. 1620); United States v. Vlahos, 19 F.Supp. 166 (D.Oregon 1937).

**8.** See Brinlee v. State, 403 P.2d 253 (Okl. Cr.1965).

of the home where the plaintiff in error lived.[9] By this we do not mean to say that surveillance from outside a curtilage under no circumstances could constitute an illegal search in view of the teachings of Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). It is our opinion, however, that on the record before us in light of *Hester*[10] the observations in question may not be deemed an unreasonable search if they were made from outside the curtilage of the Marzett farm.

■ The word "houses" in the Fourth Amendment has been extended by the courts to include the curtilage. Appellant contends that the agents entered the curtilage of the Marzett homestead when they drew within one-hundred yards of the house. Cases are cited which have held that the curtilage included a barn seventy to eighty yards from the house and separated by a driveway,[11] the position of cattle which were in a lot adjacent to a barn about one-hundred yards from the house,[12] and to a barn of unstated distance from the house but where "it was a small farm with a dwelling house and barn to the left as you faced the premises".[13] None of these decisions, however, furnishes guides which are controlling here, and their facts are distinguishable. In *Hester*, supra, the vantage point held in effect not to be within the curtilage was approximately the distance the officers were from the shed in the present case, between fifty to one-hundred yards from the home. This court has said:[14]

"Whether the place searched is within the curtilage is to be determined from the facts, including its proximity or annexation to the dwelling, its inclu-

sion within the general enclosure surrounding the dwelling and its use and enjoyment as an adjunct to the domestic economy of the family."

■ The record is not entirely clear concerning the situation of the shed in question with reference to the Marzett house, nor as to the investigators' position in relation to the house. There is an illustrative plat which shows the shed's relative location upon the farm in general. It is also mentioned in the evidence that the agents were "75 to 100 yards from the shed which was 75 to 100 yards to the east of the residence" and that the agents had crossed what presumably was the boundary fence of the farm, then a field and another little fence to reach their position for observation. No showing was made of the relationship of the area from which the observations were made to the house and shed other than by the estimated distances separating them and the fact that two fences had been crossed, or concerning any enclosures that may have surrounded them or segregated the ordinary uses of particular areas. There was no testimony from the landowner or anyone else that the place from which the observations were made was within any yard or other enclosure related in use or purpose to the shed or house. The only question directly touching the point was put to one of the investigators: "Q. Were you on the curtilage? A. No, sir. I was not." Aside from what already has been noticed, this conclusion was not thrown into question and the counsel for the appellant did not further examine concerning it.

■ The burden was upon the appellant as movant to establish that a

9. See also Janney v. United States, 206 F. 2d 601 (4th Cir. 1953), supra, where the observations were from a point apparently outside the curtilage but immediately adjacent thereto. Cf. Hodges v. United States, 243 F.2d 281 (5th Cir. 1957).

10. Cited again since *Katz* in apparent recognition of its continuing vitality in Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968).

11. Walker v. United States, 225 F.2d 447 (5th Cir. 1955).

12. Brinlee v. State, 403 P.2d 253 (Okl.Cr. 1965), supra.

13. Rosencranz v. United States, 356 F.2d 310 (1st Cir. 1966).

14. Care v. United States, 231 F.2d 22 (10th Cir. 1956).

search involved a protected area or person.[15] We conclude that he failed to sustain that burden and that the trial court's denial of the motion to suppress was supported by substantial evidence and was not clearly erroneous.

In view of the determination that the observations of the officers did not constitute an unreasonable search, immaterial is the contention of appellant that information received from an unidentified informant would not have justified either a search or a search warrant without proof that the informer had been reliable in the past and of other circumstances.[16] The only warrant secured by the officers was for search of the Marzett premises, based in part upon their prior personal observations of the operations of the still and appellant's participation. The warrant was not issued in necessary reliance upon the statements of the informant, nor were the search of the automobiles and the arrest based upon his information, for as has been seen the officers were acting upon probable cause stemming from their valid observation of illegal activities prior to any search or arrest. An interesting variation of the point is advanced in appellant's second contention that since the investigators already had information from the informer, they should have ob-

tained a warrant before making their distant observations of the Marzett property. This and appellant's related contention that the information from the informer was not demonstrated by the government to have been sufficient to justify the observations, much less any search, tend to be self-defeating as well as immaterial on the present record.

■ There is no merit to appellant's contention made for the first time by supplemental brief following oral argument here, that even though the motion to suppress is held to have been properly denied the evidence before the trial court was insufficient to sustain the convictions. Untimeliness is fatal to this contention, particularly in view of the absence of any indication that there has been a miscarriage of justice [17] and the implied representations at the trial that there was no defense other than through the motion to suppress the seized evidence.[18] Beyond this, however, the stipulations and exhibits received at the trial and the testimony from a prior hearing incorporated by reference reveal circumstantial evidence sufficient to establish the non-registration of the still and other essential elements of the charges now questioned by appellant.[19]

Affirmed.

**15.** Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307. See also Murray v. United States, 333 F.2d 409 (10th Cir. 1964), vacated on other grounds, 380 U.S. 527, 85 S.Ct. 1345, 14 L.Ed.2d 266, same, 351 F.2d 330 (10th Cir. 1965); Wilson v. United States, 218 F.2d 754 (10th Cir. 1955); United States v. Masterson, 383 F.2d 610 (2d Cir. 1967).

**16.** Scher v. United States, 305 U.S. 251, 59 S.Ct. 174, 83 L.Ed. 151. See also United States v. One 1957 Ford Ranchero Pickup Truck, 265 F.2d 21 (10th Cir. 1959).

**17.** Brooks v. United States, 330 F.2d 757 (10th Cir. 1964), cert. denied at 379 U.S. 852, 85 S.Ct. 100, 13 L.Ed.2d 56; Corbin v. United States, 253 F.2d 646 (10th Cir. 1958); United States v. Rutkin, 189 F.2d 431 (3d Cir. 1951), af-

firmed 343 U.S. 130, 72 S.Ct. 571, 96 L.Ed. 833. Cf. Strickland v. United States, 339 F.2d 866 (10th Cir. 1965).

**18.** "THE COURT: How long will it take to try this case?
"MR. SHAPARD (Attorney for the Defendant): Your Honor, in this matter we will concede all the facts in the matter and would like to offer in evidence our testimony at the motion to suppress and a diagram of the property and a deed to the property.
"We have no further matters in connection with this, and we would stipulate to whatever the district attorney wants to do as far as the facts of the still and the various other items.
"We would like to reserve our rights on the motion to suppress * * *"

**19.** Rossi v. United States, 289 U.S. 89, 53 S.Ct. 532, 77 L.Ed. 1051 (1933).