People of the State of Illinois, Plaintiff-Appellant, v. John L. Smolucha and Steve Geisler, Jr., Defendants-Appellees.

Gen. No. 54,003.

First District, Second Division.

March 24, 1970.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Matthew J. Moran, Assistant State's Attorneys, of counsel), for appellant.

Frank G. Whalen, of Chicago, for appellees.

MR. PRESIDING JUSTICE McCORMICK delivered the opinion of the court.

John L. Smolucha and Steve Geisler, Jr., hereafter referred to as defendants, were arrested on July 2, 1969, and charged with the offense of gambling, after Chicago police officers had executed a search warrant upon the premises located at 2500 West 47th Street, Chicago. Indictments charging the offense of gambling were returned and a motion to quash the search warrant was filed before the trial court. No testimony was heard.

The trial court sustained the motion to quash and suppressed the evidence, finding there was insufficient probable cause for the issuance of the search warrant. The case was stricken and the State filed a notice of appeal.

The State has prosecuted this appeal pursuant to Supreme Court Rule 604. The complaint, which had been relied upon in granting the search warrant, was not included in the State's first abstract. During oral argument the State was allowed ten days to file an additional abstract which, when filed, contained the complaint; however, the complaint as shown in the amended abstract contains no affidavit on the part of Donald Masnjak, a Chicago police detective, who signed the complaint. In the record a complaint for search warrant appears in which it is stated that Donald Masnjak, complainant, "now appears before the undersigned judge of the Circuit Court of Cook County and requests the issuance of a search warrant . . . ." On page one of the three-page document there is a note stating: "Subscribed and sworn to before me on July 2nd, 1968, at 9:30 a. m., [signed] Alfonse F. Wells, Judge."

This is the only affidavit which appears in the complaint, and it does not indicate that it is intended to cover the entire complaint. However, both parties to this appeal apparently accept as true that the complaint was fully subscribed and sworn to before the judge. While the affidavit appears only on the first page, each of the three pages is signed by both the judge and the complaining witness. We will treat it as having been properly sworn to.

The complaint was for a search warrant "to search the persons of John L. Smolucha and Bruno Ryndak and a Buick bearing 68 Ill HL 8370 and a Pontiac bearing 68 Ill 899–452, and the first floor of the rear building at 2500 West 47th Street, Chicago, Illinois and seize the following instruments, articles and things: all gambling records, implements, apparatus, paraphernalia and mon-

ies, and evidence thereof, which have been used in the commission of, or which constitute evidence of the offense of gambling."

The complaint stated that the affiant had probable cause to believe that the articles mentioned were located upon the persons and premises above indicated; and that the affiant was a detective with the Chicago Police Department, assigned to investigate gambling in Chicago. He asserted that he had interviewed a "confidential informant" on June 20, 1968, who told him that Smolucha and Ryndak were operating a wire room "in the vicinity of 47th and South Western" every day; that the informant had previously proved reliable, having given him information which resulted in two gambling convictions in 1966, one in 1967, and three guilty pleas in 1968, with two cases pending.

The affiant, Detective Masnjak, detailed the results of his surveillance as follows: On Wednesday, June 26, 1968, he observed Smolucha's car in front of his residence, and the arrival of two other automobiles which proved to be registered to Joseph Benes, who has. a long arrest record for gambling. The drivers of the two cars entered the residence. The affiant saw Smolucha leave his home and go to a tavern operated by a man who also had an arrest record for gambling; Smolucha bought a scratch sheet and drove to 47th and South Western. Bruno Ryndak also arrived there, parked his car, and walked to the rear building at 2500 West 47th Street, "carrying a small brown box, containing adding machine-type paper."

The affiant followed Ryndak the next day to the same area, but lost sight of him near a vacant lot at the rear of 2500 West 47th Street. The following Monday Smolucha entered the rear building at the same address, carrying a scratch sheet; one minute later Ryndak, also carrying a scratch sheet, entered the building, pausing first to look in all directions. During a period of several

455

months Smolucha and Ryndak were seen together at night at Chicago area racetracks.

The affiant examined the building at 2500 West 47th Street and found the first floor apparently unoccupied, although there were at least two telephone wires on the side of the building entering the first floor.

An investigation of Chicago police records revealed that Smolucha has been arrested numerous times, and in 1967 was convicted of gambling; that Ryndak was arrested for gambling on several occasions, and was under indictment for gambling at the time the complaint for search warrant was filed.

The issue this court must decide is whether the complaint we have summarized set out sufficient probable cause to authorize the issuance of a search warrant.

In Aguilar v. Texas, 378 US 108, a search warrant was issued upon the affidavit of police officers who had simply said they had reliable information from a credible person and personally believed narcotics and narcotic paraphernalia were being kept at specified premises. The Supreme Court invalidated the search warrant, finding it inadequate on two grounds; 1) No underlying circumstances were included in the affidavit which would give the magistrate the opportunity to make an independent evaluation of the informant's conclusion; and 2) The affidavit contained the bald assertion that the informant was reliable and credible, and absolutely no information was given the magistrate from which he could determine whether such conclusions were justified.

In Spinelli v. United States, 393 US 410, the Supreme Court took the opportunity to apply the Aguilar test. The court in Spinelli had before it a search warrant which had been issued upon an affidavit in which it was pointed out that the defendant had been under surveillance of FBI agents and that he had repeatedly crossed the state line while being observed. It was also stated that the defendant had repeatedly parked in front of a particu-

lar apartment in which there were two telephones. The affidavit also contained a statement that Spinelli was known as a gambler, bookmaker, and associate of the gambling fraternity; and that the FBI had been informed by a "confidential reliable informant that William Spinelli is operating a handbook and accepting wagers and disseminating wagering information by means of the telephones . . . ."

Here we would point out the differences between the affidavit in Spinelli and the one in the present case. The Spinelli affidavit merely contains the statement that the informant employed was reliable; in the case before us the assertion is made that the informant was reliable, but the affidavit explains further that information obtained from him has resulted in six previous convictions with two cases still pending. This information was one underlying circumstance from which a judge could reasonably assume that the informant was indeed reliable.

Also, the Spinelli affidavit set out in detail the defendant's travels to a particular area and his entry into a particular apartment on one occasion. In this connection the court said at page 414: "Spinelli's travels to and from the apartment building and his entry into a particular apartment *on one occasion* could hardly be taken as bespeaking gambling activity; . . . ." [Emphasis supplied.] In the instant case the affidavit recounted that within a few days not one, but two men, entered the same apartment building on three different occasions. Furthermore, on several other occasions the same men were seen approaching the apartment building, although visual contact was lost. The allegation that two independent parties repeatedly converged on the same building, carrying scratch sheets and adding machine paper indicates much more than one man simply walking into an apartment building on one occasion, as in Spinelli.

Further, the Spinelli affidavit stated that there were two separate telephones in the apartment under observation, and the court found "nothing unusual" in this. In the instant case the affiant also stated in the affidavit that the apartment in question had two telephones, but that the apartment repeatedly entered by the two men "appeared to be unoccupied." While there may be "nothing unusual" about an apartment with two telephones, there is something unusual about an apartment repeatedly entered by two men carrying scratch sheets and adding machine paper who, according to a reliable informer, are involved in gambling, and which apartment has nothing in it except two telephones.

In both Aguilar and Spinelli there was only the conclusion that the informer was reliable and credible. In the case before us that same statement was strengthened by the allegation that the informer's tips had led to previous convictions. However, there is nothing in the affidavit before us which explains how the informer himself came to the conclusion that he was observing illegal activity. Under these circumstances and under Spinelli, are we then required to hold that the warrant was incorrectly issued? The court in Spinelli points out that this is not the end of the inquiry, and states at page 415:

> "The informer's report must first be measured against Aguilar's standards so that its probative value can be assessed. If the tip is found inadequate under Aguilar, the other allegations which corroborate the information contained in the hearsay report should then be considered."

The tip in the instant case is inadequate under Aguilar because we are not informed as to the basis of the determination; only that the informant has proved reliable and credible in the past. We must therefore look to the

"other allegations which corroborate the information contained in the [affidavit]." The court in Spinelli explains what must now be asked (page 415):

> "Can it fairly be said that the tip, even when certain parts of it have been corroborated by independent sources, is as trustworthy as a tip which would pass Aguilar's tests without independent corroboration? . . . A magistrate cannot be said to have properly discharged his constitutional duty if he relies on an informer's tip which—even when partially corroborated—is not as reliable as one which passes Aguilar's requirements when standing alone."

 The converse of this statement is also true. If the informer's tip, when partially corroborated, is as reliable as a tip standing alone and meeting Aguilar's requirements, then the warrant may properly issue. The problem in both cases cited was that the magistrate was not entitled to view the tip as credible because there was no basis on which he could determine that the informer was in fact a credible person. Consequently, the court was left with only the "corroboration" which was not of itself sufficient to establish probable cause.

 In the present case we have a tip from an undisclosed informer who has proved to have had reliable sources in the past, together with corroboration by the police officer. The tip under these conditions becomes at least as persuasive as a tip standing alone, and sufficient under the Aguilar case. Of course, the best of possible affidavits would be one which includes the facts and circumstances from which the informer has decided that illegal activity is going on, a statement as to his reliability, together with facts substantiating the claim, and corroborative aspects which would lend credence to the informer's affidavit. This does not

459

mean, however, nor do the cited cases dictate, that such an affidavit is the only kind which will suffice. We must not lose sight of the fact that we are concerned with probable cause—not with proof beyond a reasonable doubt—and the judicial officer deciding whether or not the search warrant should issue should be allowed to use his common sense and not be bound by procedures as formal as those required at trial.

Even in Spinelli, where no information was given as to the past reliability of the informant, the court at page 418 said the tip was not "so insubstantial that it could not properly have counted in the magistrate's determination. Rather, it needed some further support." The court looked to the remainder of the report to determine if the suspicions engendered by the tip were reinforced by independent evidence such as would permit the conclusion that a crime was probably being committed. No such independent evidence was found.

In the instant case we start with a tip which is entitled to more credence on its face than the Spinelli tip, since the informer's past reliability is established. We find other independent allegations which, taken together with the tip, "permit the suspicions engendered by the informant's report to ripen into a judgment that a crime was probably being committed." [Spinelli, supra, at 418.]

Accordingly, the search warrant was lawfully issued, and it was error to have quashed the warrant and suppressed the evidence seized as a result of the search. Therefore, we are reversing the order appealed from and remanding the cause with directions that it be reinstated for further proceedings consistent with this opinion.

Reversed and remanded with directions.

LYONS and BURKE, JJ., concur.