THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* JOHN R. HICKS *et al.*, Defendants-Appellees.

First District (4th Division)    Nos. 62967-62973 cons.

Opinion filed May 26, 1977.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, David A. Novoselsky, and Paul Benjamin Linton, Assistant State's Attorneys, of counsel), for the People.

No brief filed for appellees.

Mr. JUSTICE ROMITI delivered the opinion of the court:

The State appeals from a judgment of the circuit court quashing a search warrant and suppressing evidence seized pursuant thereto. (Ill.

Rev. Stat. 1973, ch. 110A, par. 604(a)(1).) The State contends that the affidavit for the search warrant contained sufficient information to establish probable cause, that the warrant itself described the place with sufficient particularity and that the failure by the police to return the warrant after execution or file an inventory with the return did not void the search warrant.

We reverse.

■■ It is noted that defendants have not filed a brief as appellees. However, in accord with *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 345 N.E.2d 493, we will consider the merits of the State's position.

On November 8, 1974, Police Detective Ronald C. Van Raalte swore out a complaint for a search warrant for the occupants and rooms 102, 104, and 108 at the Arlington Park Towers Hotel in order to seize "playing cards, dice, poker chips, monies and any and all other gambling paraphanelia [*sic*]" found therein. Detective Van Raalte's affidavit in support of the complaint may be summarized as follows:

On October 11, 1974, Van Raalte spoke with a police informant who had previously furnished information leading to four arrests for gambling and four convictions. The informant had no criminal record and was not involved in the activities described in the affidavit. The informant told Van Raalte that on various occasions on a regular basis certain male and female blacks gathered in the Arlington Park Towers Hotel for the purpose of gambling. They would conduct the gambling in one or more of the first floor suites of the hotel for periods of two to three days. The group members were primarily from the south and west sides of Chicago.

That same day Van Raalte and other police officers began surveillance of the hotel. They learned that a black male rented room 114 at the hotel on October 11 and stayed there until October 15. During that time numerous other blacks with car license plates registered to addresses on the south and west sides of Chicago entered and left the room. This pattern was repeated from October 18 through October 21, with many of the same people coming and going.

On October 28 a black male rented rooms 102, 104, 106, and 108 at the hotel, remaining until October 31. Again numerous blacks with car license plates registered to addresses on the south and west sides of Chicago entered and left the rooms. One woman arrived in a car registered to a woman who had been arrested twice and charged with gambling and being the patron of a gambling establishment by the Chicago Police Department in 1971. On October 30 at about 1 a.m. Van Raalte, using night binoculars, looked through the window of room 104. The room was crowded with male and female blacks. Some of them were playing cards at tables on which there appeared to be United States currency.

Finally, on November 8, 1974, at 7 p.m., a black man rented rooms 102, 104, and 108. The rooms were observed to be set up with tables in the same manner as they had been when gambling was observed. Based on all this information Van Raalte stated that he had reasonable grounds to believe that gambling would be and was being conducted in those rooms and that the evidence sought to be seized would be found in them.

That same day a search warrant based on this complaint was issued. It authorized the search of occupants and rooms 102, 104, 108, Arlington Park Towers Hotel, Euclid and Rowhling Roads, Arlington Heights, Cook County, Illinois, and the seizure of playing cards, dice, poker chips, monies and any and all gambling paraphernalia. The search was carried out on November 9. Playing cards, dice, United States currency, and an automatic pistol were seized. The five defendants were thereupon charged with gambling and certain other charges stemming from the search were brought against two of them. Despite the claim by the defendants that the search warrant was overbroad, there is no evidence in the record indicating that it was not rooms 102, 104 and 108 of the Arlington Park Towers Hotel which were searched or that the five defendants were not in those rooms when they were searched.

On April 24, 1975, the court granted the defendants' motion to suppress the evidence seized. Unfortunately the court did not make any findings of fact or state any conclusions of law as required by the Code of Criminal Procedure. (Ill. Rev. Stat. 1973, ch. 38, par. 114—12(e).) The State has appealed.

It would appear from the defendants' motion in the trial court that basically three issues were raised: (1) whether the facts contained in the affidavit established probable cause for the issuance of the warrant; (2) whether the warrant described with sufficient particularity the place and persons to be searched and the things to be seized; (3) whether any failure by the police to comply with statutory requirements concerning the steps to be taken after the warrant has been served renders the search warrant void. We will consider each of these issues in turn.

I.

■■ As stated in *People v. Thomas* (1975), 62 Ill. 2d 375, 378, 342 N.E.2d 838:

> "In order to comply with the constitutional mandate that search warrants be issued only for probable cause, it is necessary whenever a search warrant is sought on the basis of information supplied by an anonymous informer that the issuing judge be provided with sufficient facts and circumstances from which he can determine the reliability of the informer and the accuracy of his present information."

■■ In the present case, the affidavit for the search warrant discloses a sufficient basis to establish the reliability of the informant, in that it states that prior information given by the informant had led to four arrests for gambling and four convictions, although the affidavit failed to set forth when the prior information had been given. (*People v. Ranson* (1972), 4 Ill. App. 3d 953, 282 N.E.2d 462.) Since this is true, we need not consider the State's contention that reliability should be presumed since the affidavit in effect alleged that the informant was an ordinary citizen with no prior police record and was not a participant in the gambling activities. See *People v. Hester* (1968), 39 Ill. 2d 489, at 514, 237 N.E.2d 466, *cert. denied* (1970), 397 U.S. 660, 25 L. Ed. 2d 642, 90 S. Ct. 1408.

■■ It is true that the affidavit does not provide sufficient information to show why the *informant* concluded the parties were engaged in gambling. But the affidavit was sufficient since the police detective's personal observations corroborated the information given by the informant. (*People v. Dillon* (1970), 44 Ill. 2d 482, 256 N.E.2d 451; *People v. Russell* (1977), 45 Ill. App. 3d 961, 360 N.E.2d 515; *People v. Smolucha* (1970), 122 Ill. App. 2d 452, 259 N.E.2d 319.) As the court in *Smolucha* pointed out at 122 Ill. App. 2d 459, 460:

"In the present case we have a tip from an undisclosed informer who has proved to have had reliable sources in the past, together with corroboration by the police officer. The tip under these conditions becomes at least as persuasive as a tip standing alone, and sufficient under the Aguilar case. Of course, the best of possible affidavits would be one which includes the facts and circumstances from which the informer has decided that illegal activity is going on, a statement as to his reliability, together with facts substantiating the claim, and corroborative aspects which would lend credence to the informer's affidavit. This does not mean, however, nor do the cited cases dictate, that such an affidavit is the only kind which will suffice. We must not lose sight of the fact that we are concerned with probable cause—not with proof beyond a reasonable doubt—and the judicial officer deciding whether or not the search warrant should issue should be allowed to use his common sense and not be bound by procedures as formal as those required at trial."

Detective Van Raalte and his fellow police officer observed on October 30, that Suite 104 was crowded with a large group of persons playing cards, and that money was on the table. On November 8, 1974 it was noticed that rooms 102, 104, 108 were again all rented by one person and that tables had been set up as they had been before for gambling. Clearly there can be no question that there was probable cause for the issuance of the warrant unless such observations are vitiated by the fact that

Detective Van Raalte on October 30 made his observation with the aid of binoculars.

■■ The use of binoculars does not, *per se*, constitute an unreasonable search. (*People v. Ferguson* (1977), 47 Ill. App. 3d 654, 365 N.E.2d 77; *People v. Ciochon* (1974), 23 Ill. App. 3d 363, 319 N.E.2d 332.) While the United States Supreme Court in *Katz v. United States* (1967), 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507, held the use of an electronic eavesdropping device attached to the outside of a public telephone booth to be improper, although there was no trespass, since it violated the defendant's reasonable expectation of privacy as evidenced by his closing the door of the booth, we have been unable to find a single case which has extended that doctrine to find a use of binoculars improper. (See Annot., 48 A.L.R. 3d 1178 (1973).) Thus the court in *Commonwealth v. Hernley* (1970), 216 Pa. Super. 177, 263 A.2d 904, *cert. denied* (1971), 401 U.S. 914, 27 L. Ed. 2d 813, 91 S. Ct. 886, held that the nocturnal observation through the windows of the appellees' print shop by an F.B.I. agent while standing on top of a ladder (because one could not see in from the ground) and using binoculars did not constitute an unreasonable search. We agree with the reasoning of the court in that case that:

> "We find that *Katz* does not require a different result [from that in previous cases upholding such observations] for two reasons. * * * The second, but more significant, reason is that although *Katz* does eliminate the physical intrusion requirement in electronic eavesdropping situations, it also emphasizes the need for a justifiable expectation on the part of the suspect that he is conducting his activity outside the sphere of possible governmental intrusion. Justice Harlan's concurring opinion points to a two-fold requirement: That (a) the suspect has 'exhibited an actual (subjective) expectation of privacy,' and (b) that society can view this expectation as a reasonable one. 389 U.S. at 361, 88 S. Ct. at 516. In *Katz*, the suspect entered a phone booth, closed the door and paid the toll, thereby seeking to effectively exclude the listening ear. The Court held that his expectation in this regard was justifiable. Our case presents the situation in which it was incumbent on the suspect to preserve his privacy from visual observation. To do that the appellees had only to curtain the windows. Absent such obvious action we cannot find that their expectation of privacy was justifiable or reasonable. The law will not shield criminal activity from visual observation when the actor shows such little regard for his privacy." (216 Pa. Super 177, 181-82, 263 A.2d 904, 907.)

That same reasoning is applicable here. Indeed, we note that on two occasions the curtains were drawn. Certainly, then, since the defendants

were aware of a need to pull the curtains on two occasions, they cannot claim that they expected privacy on the other occasions.

Similarly, in *Fullbright v. United States* (10th Cir. 1968), 392 F.2d 432, *cert. denied* (1968), 393 U.S. 830, 21 L. Ed. 2d 101, 89 S. Ct. 97, the court upheld the use of binoculars, ruling that their use did not change the character or admissibility of the evidence or information gained. Their use has also been upheld in *United States v. Grimes* (5th Cir. 1970), 426 F.2d 706, and *United States v. Minton* (4th Cir. 1973), 488 F.2d 37, both decided after *Katz.*

■■ The defendants' contention that the observations were too remote from the verification of the complaint to constitute reasonable cause is without merit. The detectives observed gambling on October 30, nine days before the complaint was verified. They also observed the table set up for gambling on November 8, the same day the complaint was verified. Intervals of 10 days (*People v. Holton* (1927), 326 Ill. 481, 158 N.E. 134), and 49 days (*People v. Dolgin* (1953), 415 Ill. 434, 114 N.E.2d 389), have been upheld by the Illinois Supreme Court where there was some reason to believe the offense was continuing; an interval of eight days was upheld between the possession and sale of narcotics and the issuance of the warrant even absent evidence of a continuing offense in *People v. Montgomery* (1963), 27 Ill. 2d 404, 189 N.E.2d 327. These decisions are controlling. It must be remembered that the only bearing the passing of time by itself has is its effect upon the existence of probable cause. (*People v. Montgomery* (1963), 27 Ill. 2d 404, 189 N.E.2d 327.) Here on the very day the complaint was verified the detectives observed that the tables had been set up again as they were on the previous occasion a week before when gambling occurred. Under the circumstances the interval was not so long or unreasonable as to render the proceedings void.

■■ The defendants' contention that because only the first and third pages of the three-page affidavit were signed by the judge, the second page must be disregarded thus rendering the whole of the affidavit meaningless is totally without merit. Affidavits for a search warrant are to be interpreted in a realistic manner and are not to be tested by elaborately technical requirements. (*People v. Johnson* (1973), 13 Ill. App. 3d 1020, 304 N.E.2d 681, *cert. denied* (1974), 419 U.S. 865, 42 L. Ed. 2d 101, 95 S. Ct. 119.) The pages were numbered and page one of the complaint ended in the middle of a sentence. It is clear that the three pages constituted a single document. (*People v. Johnson* (1973), 13 Ill. App. 3d 1020, 304 N.E.2d 681, *cert. denied* (1974), 419 U.S. 865, 42 L. Ed. 2d 101, 95 S. Ct. 119.) The language of the affidavit shows that the issuing judge would necessarily have read all three pages in determining that probable cause existed and we must and have done so also. *People v. La Valley* (1972), 7

Ill. App. 3d 1051, 289 N.E.2d 45; *People v. Johnson* (1973), 13 Ill. App. 3d 1020, 304 N.E.2d 681, *cert. denied* (1974), 419 U.S. 865, 42 L. Ed. 2d 101, 95 S. Ct. 119.

## II.

■■ The defendants contended below that the designation of the place to be searched was insufficient because it did not provide a street address for the hotel. However, the only requirement is that the description of the place to be searched is sufficiently definite that the officer to whom the warrant is directed may locate it with certainty. (*People v. Watson* (1962), 26 Ill. 2d 203, 186 N.E.2d 326; *People v. Lavendowski* (1928), 329 Ill. 223, 160 N.E. 582; *People v. Holton* (1927), 326 Ill. 481, 158 N.E. 134.) There was absolutely no evidence presented to show there was more than one Arlington Park Towers Hotel at the intersection of Rowhling Road and Euclid Avenue in Arlington Heights. Following the warrant in the instant case the police detectives could not have gone to a hotel other than the one named. Accordingly, the designation of the place to be searched was sufficient, despite the fact no street number was given. *People v. Holton* (1927), 326 Ill. 481, 158 N.E. 134.

The defendants also complained that the persons to be searched were not described with particularity. Apparently they contended both that under the warrant all occupants of the hotel could have been searched, and second, there was no specific designation of each person to be searched by name or physical characteristic.

Under a common sense reading of the search warrant, it is clear that authorization was only given to search occupants of rooms 102-104-108. But even if the warrant could be interpreted to allow the search of other occupants of the hotel, the defendants have no complaint since, in fact, such other occupants were not searched. See *People v. Holton* (1927), 326 Ill. 481, 158 N.E. 134.

It is true that a search warrant for a person must describe the person as specifically and accurately as that required for the search of a place, that test being that it is so described as to leave the officers no doubt and no discretion as to the premises to be searched. (*People v. Staes* (1968), 92 Ill. App. 2d 156, 235 N.E.2d 882.) Thus, a warrant simply allowing the search of John Doe and in no other way designating who he is is invalid since under such a warrant anyone could be searched. (*People v. Staes* (1968), 92 Ill. App. 2d 156, 235 N.E.2d 882.) But here the persons were designated as the occupants of rooms 102-104-108. There could be no doubt as to which persons were meant.

■■ But even if the designation of the persons to be searched were void as ambiguous, such search was authorized by Ill. Rev. Stat. 1973, ch. 38, par. 108—9. (See *People v. Kielczynski* (1970), 130 Ill. App. 2d 231, 264

N.E.2d 767.) And a partial invalidity of a search warrant does not render it totally invalid. *People v. Russell* (1977), 45 Ill. App. 3d 961, 360 N.E.2d 515.

■■ The defendants' contention that the property to be seized is insufficiently described is also without merit. It has long been the law in Illinois that where, as in the case of gambling paraphernalia, the purpose is not to seize specified property, but only property of a specified character which by reason of its character is contraband, a description by designating its character is sufficient. (*People v. Curry* (1973), 56 Ill. 2d 162, 306 N.E.2d 292; *People v. Prall* (1924), 314 Ill. 518, 145 N.E. 610; *Frost v. People* (1901), 193 Ill. 635, 637, 61 N.E. 1054.) Thus in *Frost*, a warrant commanding the search for "gaming apparatus and implements used, kept and provided to be used in unlawful gaming" was held to be valid.

### III.

The defendants' contention that the warrant was void because of a failure to return the warrant after execution or file an inventory with the return, even assuming such allegations to be true, has been answered by the Illinois Supreme Court in *People v. Guston* (1929), 338 Ill. 52, 169 N.E. 822; *People v. York* (1963), 29 Ill. 2d 68, 193 N.E.2d 773; *People v. Curry* (1973), 56 Ill. 2d 162, 306 N.E.2d 292, all of which held that the failure to comply with statutory requirements concerning the steps to be taken after the warrant has been served does not render the search warrant void.

Finding the motion of the defendants to quash the search warrant to have been totally without merit, we reverse the order of the trial court granting said motion.

Reversed.

DIERINGER, P. J., and JOHNSON, J., concur.