416 So.2d 827 (1982)
Joanne Marie BERNSTIEL, Appellant,
v.
STATE of Florida, Appellee.
No. 81-669.
District Court of Appeal of Florida, Fifth District.
June 9, 1982.
Rehearing Denied July 15, 1982.
Salvatore D. Mollica, Gainesville, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and C. Michael Barnette, Asst. Atty. Gen., Daytona Beach, for appellee.
FRANK D. UPCHURCH, Jr., Judge.
Appellant appeals from an order withholding adjudication of guilt and placing her on probation for unlawful possession of a controlled substance. Appellant entered a plea of nolo contendere reserving the right to appeal the denial of her motion to suppress.
Appellant was renting property on which was located a trailer and a greenhouse. After hearing rumors that marijuana was being cultivated in the greenhouse, Detective Rye decided to investigate. While standing on adjacent property, Rye saw green foliage through an open door and protruding from the top of the greenhouse which had no roof. Rye thought that the plants were marijuana but did not believe that he had probable cause for a search warrant. He returned the next day and confirmed his suspicions with the use of binoculars. On the basis of his observations, he then obtained a search warrant and subsequently seized the marijuana.
Appellant contends that the use of binoculars constituted a warrantless search. She further argues that the probable cause derived from this infringement of her reasonable expectation of privacy could not properly form the basis for the subsequently issued search warrant. We disagree and affirm.
Whether the use of binoculars constitutes a search does not appear to have been addressed in Florida. Other aids to vision such as searchlights and flashlights have been held not to constitute a search. United States v. Lee, 274 U.S. 559, 47 S.Ct. 746, 71 L.Ed. 1202 (1927); Albo v. State, 379 So.2d 648 (Fla. 1980). In State v. Parnell, 221 So.2d 129 (Fla. 1969), the supreme court approved of an officer's binocular observation *828 of defendant's home while awaiting the arrival of a search warrant stating that the "clandestine surveillance ... was reasonable and justifiable and not an invasion of the privacy of the defendant... ." 221 So.2d at 132. And in numerous cases, the courts have upheld searches based on probable cause derived from binocular observation albeit without specifically addressing the issue raised by appellant. See, e.g., Webb v. State, 373 So.2d 400 (Fla. 1st DCA 1979); Mahoney v. State, 300 So.2d 743 (Fla. 1st DCA 1974); State v. Knapp, 294 So.2d 338 (Fla. 2d DCA 1974).
Other jurisdictions have held that the use of binoculars does not per se constitute a search. See People v. Hicks, 49 Ill. App.3d 421, 7 Ill.Dec. 279, 364 N.E.2d 440 (1977). See also Annot., 48 A.L.R.3d 1178 (1973). Rather, the issue appears to be resolved using the standard applicable to general search and seizure cases as enunciated in Katz v. United States, 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967).
In Fullbright v. United States, 392 F.2d 432 (10th Cir.1968), cert. denied, 393 U.S. 830, 89 S.Ct. 97, 21 L.Ed.2d 101 (1969), the court upheld the introduction of evidence which government agents had gathered by looking into the defendant's shed with binoculars. When the investigators made their initial observation, the door to the shed was open and its light was sufficient to reveal what was happening. The court noted that the use of binoculars did not change the character or admissibility of the evidence gained. 392 F.2d at 434.
Similarly, in Commonwealth v. Hernley, 216 Pa.Super. 177, 263 A.2d 904 (1970), cert. denied, 401 U.S. 914, 91 S.Ct. 886, 27 L.Ed.2d 813 (1971), the court upheld the warrantless use of binoculars by a police agent to look through the window of the defendant's shop. The court noted that the activity had occurred prior to the holding in Katz, but even assuming that the rationale did apply, the defendant had failed to demonstrate a reasonable expectation of privacy by leaving the windows of his shop uncurtained. 263 A.2d at 907.
Other jurisdictions, however, have rejected the rationale of Fullbright and Hernley. See United States v. Taborda, 635 F.2d 131 (2d Cir.1980); United States v. Kim, 415 F. Supp. 1252 (D.Haw. 1976). Taborda involved the surveillance of a defendant's residence with a high-powered telescope. Kim involved surveillance by telescope and by binoculars; however, the emphasis appears to be on the danger imposed by more sophisticated devices such as telescopes:
It is inconceivable that the government can intrude so far into an individual's home that it can detect the material he is reading and still not be considered to have engaged in a search... . If government agents have probable cause to suspect criminal activity and feel the need for telescopic surveillance, they may apply for a warrant; otherwise, they have no right to peer into people's windows with special equipment not generally in use.
415 F. Supp. at 1256.
In State v. Barnes, 390 So.2d 1243 (Fla. 1st DCA 1980), the First District approved of the rationale of Taborda and Kim. In Barnes, a police officer observed a plant growing on defendant's property but was unable to identify it as marijuana with his binoculars. The observation was made during the daylight hours from adjoining property. Using a high-powered telescope, the officer was able to identify the plant. He then returned at night with additional officers but without a search warrant and arrested the defendant.
In affirming the order of suppression, the court rejected the state's argument that the marijuana had been properly seized as being in "plain view":
The plain view exception to the warrant requirement cannot in our opinion be used to justify the seizure of evidence clearly identifiable only through a telescope, the warrantless use of which constitutes an intrusion into an area not reasonably expected to be exposed to the public. "If government agents have probable cause to suspect criminal activity and feel the need for telescopic surveillance, *829 they may apply for a [search] warrant." United States v. Kim, 415 F. Supp. 1252 (D.Haw. 1976). Otherwise, we conclude such conduct is an intrusion into an area in which there is a reasonable expectation of privacy, accomplished by special equipment not in general use.
390 So.2d at 1244.
The court also noted that "Between the officer's daytime attempts to view the marijuana from the neighbor's yard and his return at night with two additional officials, when the evidence was seized, a warrant could have been obtained." Id. Thus, by implication, the court indicated that the use of binoculars did not constitute an impermissible search.
In the case before us, green foliage which appeared to be marijuana could be seen through the open door and protruding from the top of the greenhouse by an officer standing on adjacent property. If the contraband had been observed solely by the naked eye, no search would have occurred. See State v. Rickard, No. 54,877 (Fla. April 29, 1982) [1982 F.L.W. 193]. We now hold that the use of ordinary binoculars here does not alter this conclusion.
As to the seizure of the contraband, we feel that this matter is controlled by the principles enunciated in State v. Rickard. There the defendant's actions in erecting a chain link fence and a plywood partition to obstruct the view of a neighbor gave rise to a reasonable expectation of privacy even though the contraband was visible from a nearby orange grove. Here appellant took similar measures to guard her privacy.[1] Before law enforcement officers could lawfully enter this constitutionally protected area and seize the contraband, they were required to have a warrant or warrant exception. Id.; Ensor v. State, 403 So.2d 349 (Fla. 1981). Here the officer obtained a warrant before seizing the marijuana in the greenhouse. As we have concluded that in these circumstances the enhanced observation could properly serve as the basis for this warrant, we find no violation of appellant's right to be free from unreasonable searches and seizures.
AFFIRMED.
ORFINGER and COBB, JJ., concur.
NOTES
[1] Here the property was fenced and guarded by several large dogs, the greenhouse was situated within the fenced property at a distance estimated to be between 120 and 220 feet from the fence, and the walls of the greenhouse were made with a translucent material which obscured the view of the interior.