421 So.2d 546 (1982)
Wayne Kittredge NEWBERRY, Appellant,
v.
STATE of Florida, Appellee.
No. 80-731.
District Court of Appeal of Florida, Fourth District.
September 15, 1982.
Rehearing Denied December 8, 1982.
*547 Charles H. Vaughan, Fort Lauderdale, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Joy B. Shearer, Asst. Atty. Gen., West Palm Beach, for appellee.
STONE, BARRY J., Associate Judge.
The defendant appeals from an order denying a motion to suppress evidence arising out of a search and seizure. Appellant contends that the search was based upon an allegedly faulty and constitutionally defective affidavit, and that the court allowed evidence to be admitted which was obtained as a result of an allegedly illegal entry in violation of appellant's rights under the fourth amendment of the U.S. Constitution. The appellant further contends that the trial court erred in not abiding by the terms of a plea conference agreement regarding the sentence to be imposed, and by not sentencing defendant under the youthful offender statute in effect at the time.
The evidence shows that the investigating officer believed that the residence in question had been used for narcotics smuggling on a previous occasion. The officer, relying on information furnished by a confidential informant, commenced a visual surveillance, in daylight, of the rear of appellant's residence from a location across a canal. The defendant's vessel had been under observation during the day proceeding along the intracoastal waterway. The surveillance then continued into the nighttime hours with no unusual occurrences until, at approximately 1:00 a.m., the lights of the residence were extinguished. At that time the officer commenced viewing the yard of the premises through a nightscope from a point some 300 feet from the rear yard in question.
A nightscope is used in the manner of a telescope, or binoculars, and enables the observer to penetrate the darkness, viewing the area and the subjects in a green lumination. Using this scope the officer observed individuals proceeding back and forth between the residence and the vessel carrying bales that appeared to be wrapped in burlap, which the officer believed contained marijuana, being off loaded from the boat to the premises. The officer further was able to determine that the defendants in question were wearing dark clothing and that no lights were being used.
The officer then proceeded directly, in spite of the early morning hours, to secure a search warrant for the premises. The officer did not advise the judge that the information contained in the affidavit was obtained through the use of a nightscope.
*548 At the hearing there was disputed testimony as to the method by which the search was implemented. The State's witnesses testified that the entry was pursuant to the knock and announce procedures provided for in Section 933.09 of the Florida Statutes. The court found that the search warrant had been properly executed.
Following the court's ruling on the motion to suppress, a change in plea was entered and accepted, preserving the right to appeal on the foregoing issues, based upon a "plea bargain". The appellant changed his plea upon the understanding that following a pre-sentence investigation he would be sentenced to a "cap" of five years. It is the contention of appellant that the plea colloquy reflects no indication that he would be subjected to any combination of imprisonment and probation in excess of the five year cap. In fact, the court imposed a sentence, following pre-sentence investigation, of five years in the state penitentiary followed by five years of probation. Further, at the time of sentencing the appellant was nineteen years old and had no prior record of arrest or conviction. Although the appellant did qualify for treatment as a youthful offender, the lower court was of the opinion that youthful offender sentencing was not mandatory under the statute applicable prior to its amendment, and sentenced the appellant as an adult.
With respect to this sentencing, the trial judge, having accepted a plea bargain, may not subsequently substantially alter that agreement. Johnson v. State, 332 So.2d 362 (Fla. 1st DCA 1976); Odom v. State, 310 So.2d 770 (Fla. 2d DCA 1975); Severino v. State, 286 So.2d 234 (Fla. 2d DCA 1973). Therefore, with respect to the issue of the length of the sentence, we hereby reverse and remand with directions to the trial court to either modify and amend the sentence or, in the alternative, to grant the defendant the option of withdrawing the change in plea and reinstituting the plea of not guilty. See Davis v. State, 308 So.2d 27 (Fla. 1975) and Carmo v. State, 378 So.2d 850 (Fla. 4th DCA 1979).
The record further reflects that the appellant qualifies under the mandatory language of section 958.04(2), Florida Statutes (1979) as a youthful offender under the wording of the statute prior to its amendment. By the use of the word "shall" the legislature made the application of the statute mandatory, in cases prior to its amendment and, therefore, we direct the trial court, upon resentencing in this cause, to apply the Youthful Offender Act. See State v. Goodson, 403 So.2d 1337 (Fla. 1981); Warren v. State, 391 So.2d 775 (Fla. 4th DCA 1980).
The trial court found that the police, in the execution of the search warrant, complied with section 933.09, Florida Statutes. This finding of fact was supported by testimony and evidence that the police officers knocked loudly on the door, announced their identity and purpose, knocked once again and announced again before breaking a window. The officer testified that he did not put his gun inside the window, but that when someone yelled from inside that they were coming to the door the officers waited until the door was opened, at which time they entered. Although there was testimony by the defendant to contradict the state's witnesses, the trial judge after hearing all of the testimony announced his findings which are supported by the record and are, therefore, affirmed. Brown v. State, 380 So.2d 570 (Fla. 4th DCA 1980); State v. Dominguez, 367 So.2d 651 (Fla. 2d DCA 1979); Johnson v. State, 157 Fla. 685, 27 So.2d 276 (1946).
Finally, with respect to the search and seizure issue, appellant challenges the validity of the search warrant. Appellant contends that the facts in the affidavit were disclosed during an unlawful search by the use of a nightscope, without a warrant having first been obtained for its use, invading the rear yard area in which the defendants claim an expectation of privacy. Appellant further contends that the viewing was from private property upon which the appellant presumes the officer was trespassing in the absence of evidence that the owner of the property granted permission for its use as a surveillance point.
*549 We hold that the trial court did not err in denying the motion to suppress. The use of the nightscope as an aid in the surveillance by the law enforcement officer, under the facts of this case, did not constitute an impermissible invasion of defendant's reasonable expectation of privacy, did not constitute an unlawful search and did not violate defendant's fourth amendment rights.
We find that the use of a nightscope, under the conditions set forth in the above statement of facts, does not constitute a "search" within the intent of those cases that require a warrant before a search using electronic or other artificial devices may be constitutionally permissible. See Lightfoot v. State, 356 So.2d 331 (Fla. 4th DCA 1978) and Lovely v. State, 351 So.2d 1114 (Fla. 4th DCA 1977). See also Marshall v. United States, 422 F.2d 185 (5th Cir.1970) and State v. Daniel, 319 So.2d 582 (Fla. 4th DCA 1975).
It is unreasonable to expect law enforcement officials not to take advantage of modern technology, and tools that are in common usage, in the ordinary course of the performance of their duties. Observations made by police with the use of binoculars, flashlights, and similar aids have been recognized as constitutionally permissible without a warrant. United States v. Lee, 274 U.S. 559, 47 S.Ct. 746, 71 L.Ed.2d 1202 (1927); United States v. Minton, 488 F.2d 37 (4th Cir.1973); United States v. Loundmannz, 472 F.2d 1376 (D.C. Cir.1972); United States v. Grimes, 426 F.2d 706 (5th Cir.1970); Marshall v. United States, 422 F.2d 185 (5th Cir.1970); Fullbright v. United States, 392 F.2d 432 (10th Cir.1968); Albo v. State, 379 So.2d 648 (Fla. 1980); McDougall v. State, 316 So.2d 624 (Fla. 4th DCA 1975). See also, State v. Elbertson, 340 So.2d 1250 (Fla. 3d DCA 1976); and Gianetta v. State, 296 So.2d 654 (Fla. 2d DCA 1974).
The defendant relies on Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) and United States v. Kim, 415 F. Supp. 1252 (D.C. Hawaii 1976). However, these cases are clearly factually distingishable. "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection," Katz v. United States, supra.
We hold that where a defendant conducts himself in the manner described above, in an area where the defendant does not have a reasonable expectation of privacy, the mere fact that night falls, and the defendant performs his illegal activities under cover of darkness, does not grant a shield to the defendant. There is no license to engage in criminal activity with impunity after sunset in an open area that would not be so protected after sunrise. Nor does a defendant engaged in criminal activities have carte blanche to operate under the umbrella of darkness merely because the observations of a crime, otherwise open to view, were made with the aid of the particular scope device used here rather than some other visual aid, such as a flashlight or floodlight. Persons conducting criminal activities in the open at night assume the risk that they may be so observed, whether by police or others.
In reaching our decision this court is not unmindful of the case of State v. Barnes, 390 So.2d 1243 (Fla. 1st DCA 1980), and of the recent case of State v. Rickard, 420 So.2d 303 (Fla. 1982). In Barnes, the police, although having ample opportunity to do so, did not obtain a search warrant. Further, in that case there were no exigencies preventing the officer from obtaining a warrant for the use of the high-powered telescope necessary to view the offending marijuana plant. However, the officer in the instant case had no way of determining in advance which of numerous available tools might be required for his use in conducting the surveillance, which began in daylight hours and which only required the use of the nightscope once the artificial lighting was extinguished. Once the officer arrived at the decision that a nightscope was needed, it would obviously be absurd to forbid him its use while the criminal activity was in progress until he sought and obtained a warrant to be utilized long after such activity had been completed.
*550 Our holding is consistent with the recent decision of State v. Rickard, supra. In the case before us there was no seizure until after the warrant was obtained by the officer and, here, the defendant had not taken the clear steps evidencing a reasonable expectation of privacy such as those that were expressly found in Rickard. The court, in State v. Rickard, supra was quite specific in reasoning that the defendant in that case had taken clear steps to conceal the area from view, thereby distinguishing the illegal search in that case from the legal search in Lightfoot v. State, supra. Similarly, in State v. Brady, 406 So.2d 1093 (Fla. 1981), the court went to great lengths to emphasize the factual support for their holding. In both of these cases the Supreme Court recognized and anticipated the factual distinctions that must be made in each case with respect to the extent to which the specific facts support a protected expectation of privacy. It is significant that in this case the acts, taking place in an open yard, could be freely observed from yards across the canal and by traffic on the canal in daylight or with artificial light. There, therefore, was no impermissible "search," and no unreasonable governmental intrusion, into the defendant's constitutionally protected privacy prior to obtaining the warrant by the officer. Further, whatever expectation of privacy defendant may have had, by virtue of the fact that the yard was dark, is not one that society is prepared to recognize as reasonable under the facts of this case.
Appellant further contends that the warrant was defective inasmuch as the affidavit did not mention the use of the nightscope. However, there is no requirement that an affidavit in support of a warrant contain all facts that might have been mentioned, since such facts can subsequently be the subject of testimony at the hearing on the motion to dismiss. Hunter v. State, 375 So.2d 1152 (Fla. 2d DCA 1979).
And finally, the defendant contends that the state had the burden to establish that the police officer had a legal right to be in the location from which the observations were made and that, therefore, in accordance with Neary v. State, 384 So.2d 881 (Fla. 1980), the motion to suppress should have been granted. However, we find that there is no basis in the record of this case from which to determine that the officer was in fact trespassing and, in any event, we find that the defendant has no standing to raise this issue. Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); Mancusi v. DeForte, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968). Similarly, State v. Morsman, 394 So.2d 408 (Fla. 1981), is not applicable here as that case involved a warrantless trespass on the defendant's property.
Accordingly, we affirm the trial court's order denying the motion to suppress. The trial court, however, is directed to vacate the sentence. The cause is remanded to the trial court with directions to impose a sentence in accordance with the plea bargain and in accordance with the Youthful Offender Act.
LETTS, C.J., concurs specially with opinion.
ANSTEAD, J., dissents with opinion.
LETTS, Chief Judge, specially concurring:
The two cases cited in Judge Anstead's dissent involve situations where the police failed to get a warrant. In the case before us now, a warrant was in fact obtained. Moreover, this very Court has impliedly upheld the use of a night scope. See State v. Trepany, 409 So.2d 529 (Fla. 4th DCA 1982).
Similarly the Fifth District, citing numerous federal cases as well as the Florida Supreme Court, has upheld the use of binoculars. Bernstiel v. State, 416 So.2d 827 (Fla. 5th DCA 1982). Even State v. Barnes, 390 So.2d 1243 (Fla. 1st DCA 1980) does not appear to ban binoculars, but rather attacks the use of sophisticated devices such as a high powered telescope.
ANSTEAD, Judge, dissenting:
I dissent to the views expressed by the majority as to whether appellant had a *551 reasonable expectation of privacy on the authority of State v. Rickard, ___ So.2d ___ (Fla. case No. 54,877, opinion filed April 29, 1982) [7 FLW 193] and State v. Barnes, 390 So.2d 1243 (Fla. 1st DCA 1980). In Rickard the Florida Supreme Court indicated that ordinarily people do have a reasonable expectation of privacy in their backyards. And in Barnes the First District indicated that it was unlawful for authorities to use a high-powered telescope to identify objects in a backyard without first securing a warrant. Notwithstanding my views on this issue I would remand the case for rehearing to determine whether or not appellant had standing to assert his privacy claims.