(No. 17533.—Judgment affirmed.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JENNIE CIOPPI *et al.* Plaintiffs in Error.

*Opinion filed October 28, 1926.*

1. CRIMINAL LAW—*one good count will support a general verdict of guilty—prohibition.* Where there are one or more good counts in an indictment and the evidence supports the charge in the good count or counts, the proof under a general verdict of guilty will be referred to the good count and the conviction sustained; and where the jury finds the defendants guilty under two counts charging a violation of the Prohibition act, one of which counts is good while the other is alleged bad, the conviction will be sustained where the verdict does not refer to a particular count and the judgment and sentence are within the limits of the penalties prescribed by the statute for the offense well charged.

2. PROHIBITION—*indictment need not allege intoxicating liquor was fit for use as a beverage.* A count in an indictment charging unlawful possession of intoxicating liquor for the purpose of sale need not allege that the liquor was fit for beverage purposes, as the term "intoxicating liquor" signifies that it is potable or fit for beverage purposes.

3. SAME—*what is included in the term "intoxicating liquor."* The term "intoxicating liquor" includes brandy, whiskey, rum, gin, beer, ale and wine, and in addition thereto any spirituous, vinous, malt or fermented liquor, liquids and compounds, whether medicated, proprietary, patented or not and by whatever name called, containing one-half of one per cent or more of alcohol by volume, which are fit for use for beverage purposes as defined in section 2 of the Prohibition act.

322—23

4. SAME—*when error in admitting evidence seized in part of building not described in search warrant will not reverse.* Where a search warrant authorizes search of the "first floor" of an apartment building, the fact that the officers went to the basement and found intoxicating liquors there and the admission in evidence of the articles seized will not require a reversal of a judgment of conviction, where there is evidence that intoxicating liquors were found on the first floor and were sold and drunk upon the premises three days before the seizure, as such evidence is sufficient to convict the defendants of the charge in the indictment.

5. SAME—*when evidence of sales is admissible under a count charging unlawful possession of liquor.* Under a count of an indictment charging unlawful possession of intoxicating liquor for the purpose of sale, testimony of witnesses that they purchased and drank intoxicating liquor upon the premises of the defendants, and that they saw others being served liquor there three days before a raid upon the premises under a search warrant, when the liquor charged to have been unlawfully possessed was found and seized and later introduced in evidence, is proper evidence of the intent with which the liquor was possessed.

WRIT OF ERROR to the Circuit Court of Winnebago county; the Hon. EARL D. REYNOLDS, Judge, presiding.

ROY F. HALL, and W. R. DUSHER, for plaintiffs in error.

OSCAR E. CARLSTROM, Attorney General, WILLIAM D. KNIGHT, State's Attorney, S. S. DUHAMEL, and ALFRED B. LOUISON, for the People.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Plaintiffs in error were found guilty by a jury in the circuit court of Winnebago county on an indictment of two counts charging them with the illegal possession of intoxicating liquor, and also with the illegal possession of such liquor for the purpose of selling the same, without permit from the Attorney General of the State. They are wife and husband and lived at an apartment building at 144 Fourteenth avenue, in the city of Rockford, Illinois, and occupy the first floor of the apartment and one-half of the basement thereunder, while the family on the second floor

occupies that floor and have control of the other half of the basement. Motions for a new trial and in arrest of judgment were overruled by the court, and the defendant John Cioppi was adjudged to pay a fine of $1000 and the defendant Jennie Cioppi was adjudged to serve four months in the county jail and both to pay the costs of prosecution, and the defendant Jennie Cioppi is to stand committed to the county jail until the costs are paid. The defendants have sued out a writ of error from this court for a review of the record, constitutional questions being raised in this court and in the lower court, and the plaintiffs in error are herein referred to as defendants.

In the first count of the indictment it is charged that the defendants, within the said county and State, on December 2, 1925, unlawfully and willfully did possess, for the purpose of sale, certain intoxicating liquor without having a permit from the Attorney General of the State of Illinois. In the second count it is charged that the defendants on December 2, 1925, at and within the said county and State, intoxicating liquor unlawfully and except as authorized in the Illinois Prohibition act did then and there possess without first having obtained, and without then and there having, a permit from the Attorney General of the State of Illinois so to do. Motions to quash the indictment and each count thereof were made by the defendants and overruled by the court, and pleas of not guilty were filed.

A motion was made by the defendants to quash a certain search warrant issued by the police magistrate of said city and to impound the evidence obtained by certain seizures of intoxicating liquors seized by virtue of said warrant and to exclude such evidence from the jury. The court overruled the motion and the cause proceeded to trial. The complaint before the police magistrate for the issuing of the search warrant was made by Harvey J. Litzinger, of Rockford, Illinois, on December 2, 1925, and was sub-

scribed and sworn to by him before the police magistrate. The material parts of the complaint are the following: That he has just and reasonable grounds to believe, and does believe, that intoxicating liquor is now unlawfully possessed, kept for sale, sold and disposed of in violation of the Illinois Prohibition act, and certain mash, still and other property designed for the illegal manufacture of liquor is possessed, without a permit from the Attorney General, in the first floor of the two-story brick apartment house, being situated upon the premises commonly known as No. 144 Fourteenth avenue, occupied as a private dwelling by a person or persons whose name or names are unknown to affiant, said apartment building being in the city of Rockford and in the county and State aforesaid. The affiant then states as his reasons for his belief that on two different visits by him on November 29, 1925, affiant personally purchased intoxicating liquor by the drink in the kitchen of said first floor from a woman whose name is unknown to him and that he drank said liquor upon said premises, and that he then saw other intoxicating liquors upon said premises and that he also saw other men there drinking. The magistrate issued a search warrant on said complaint, addressed to Henry Dobereiner, sergeant of police of Rockford, which recites the substance of the complaint made by Litzinger and then states that the undersigned police magistrate is satisfied that there is reasonable cause for Litzinger's belief. The warrant then directs and commands, in the name of the people, that said officer take with him the necessary and proper assistants, in the day or night time, and forthwith enter the first floor of said apartment and make diligent and careful search for intoxicating liquor, and any mash, still and other property hereinabove described, and seize and bring any and all intoxicating liquors there found, and all vessels containing the same, and all property, implements, furniture and vehicles kept or used for the purpose of violating or with which to violate any

law of this State there found, and any and all persons, if any there be, in whose possession they may be found, forthwith before "me at my office in Rockford, Illinois, or before some other judge or justice of the peace having cognizance, there to be dealt with pursuant to law." The officer aforesaid made return to said warrant that he did on December 2, 1925, in the daytime of said day, enter and duly search, as required by said warrant, the place described therein, and then and there found and took from the possession of Jennie Cioppi and John Cioppi intoxicating liquor and vessels containing the same, described as seven pint bottles of homebrew beer, three quart bottles of homebrew beer, one one-pint bottle of moonshine whiskey, one quart bottle moonshine whiskey, one gallon glass jug containing wine and one one-gallon stone jug containing wine, and no other property, implements, furniture or vehicles, all of which he brought before the police magistrate, together with John and Jennie Cioppi, in whose possession the same was found.

The evidence in this record is in substance the following: The seven pint bottles of homebrew beer and the three quart bottles of homebrew beer, the one-gallon glass jug and the one-gallon stone jug of wine, were found by the officers and taken from the basement of said building. The one pint bottle and the one quart bottle of moonshine whiskey was found and taken from the kitchen, which was on the first floor of the flat-building. The moonshine whiskey was a white liquor. The liquors above described were all analyzed by a chemist, who found that the white moonshine whiskey contained 47.1 per cent of alcohol by volume, the beer 3.5 per cent of alcohol by volume and some of it 3.9 per cent by volume, and the wine contained 8 per cent alcohol by volume. The chemist describes the wine in the one-gallon stone jug as pure wine, 8 per cent alcohol by volume. The evidence showed that the beer and wine were home products, and probably in process of fer-

mentation on December 2, when the officers seized it. The chemist analyzed these liquors on December 19,—seventeen days after it was seized,—and gave it as his judgment that the beer on the day it was seized contained more than three per cent of alcohol by volume, supposing that it had been fermenting from the day seized to the date analyzed; and that all the liquors aforesaid were fit for beverage purposes. The apartment building in which the liquors were seized, where the. defendants lived, is described as a two-story brick building with a large porch in front, "then a big living room, and a bed-room to the right of the living room, and the kitchen in the rear, and another middle room, presumed to be a dining room," all on the first floor, the kitchen being about nine by twelve feet. The basement is just under the first floor. In addition to the liquors seized as aforesaid the officers testified that they found three kegs of wine of thirty-two gallons each, and two kegs of about five gallons each, in the cellar. They described the grape juice in kegs as fermenting and fresh. They did not take any of these kegs or any samples from them but left them in the cellar. They described the liquors that they seized as intoxicating liquors,—the whiskey and the beer. The four officers who made the raid testified that at the time they made it they found the two defendants in the kitchen, on the first floor of the building, their daughter, and Arthur Carlson and Andrew Hamilton, and that Carlson and Hamilton both showed evidences of having been drinking intoxicating liquors and that Carlson was very much intoxicated, and that they were near. a table which had nothing on it except an oil-cloth. It was in this kitchen that they found the intoxicating liquor referred to in the record as white mule or whiskey.

Harry Baumgartner and Harvey Litzinger, two investigators employed and working for the county of Winnebago, testified for the People that on Sunday, November 29, three days before the raid, they visited the flat in question

twice, and that on their morning visit found there Jennie Cioppi and her husband and another man whom they did not know. Baumgartner asked for a drink and Jennie Cioppi served them with intoxicating liquor, (the two witnesses and the other man,) and he paid her twenty-five cents each for the three drinks of liquor served. Litzinger then bought a round of three drinks of the same liquor from her, which he paid for. They again visited the place about four o'clock in the afternoon of that day, and in the same kitchen aforesaid they found John Cioppi and his wife and another girl, presumably their daughter, and three other men that they did not know. John Cioppi brought up a pitcher of white moonshine liquor, and the five men were served with two rounds of drinks by Mrs. Cioppi at twenty-five cents a drink, Baumgartner and Litzinger paying for the drinks. They also saw Mrs. Cioppi serve liquor to the other men, which they drank and paid her for the drinks. All of these drinks were served in the kitchen. Baumgartner and Litzinger asked her to sell them a bottle of liquor to take with them, but she refused to sell them any liquor to take with them. They also went to the same place Monday morning following that Sunday and tried to again buy liquor, but Mrs. Cioppi told them she was cleaned up and did not have any more to sell. They described the furniture in the kitchen about the same as did the officers who made the raid, except they testified about seeing a lot of wine glasses there. They also testified that there was wine that was also served that afternoon to some of the guests in the same kitchen, and that they saw in the kitchen sink two bottles that appeared to be beer.

The two defendants and their daughter, and Nels Carline, who was apparently a suitor of the daughter, and one Ernie Johnson, who boarded with the defendants, testified in their behalf. Johnson testified that on the Sunday afternoon aforesaid he saw two men there, apparently the two investigators, and that they asked Jennie Cioppi if they

could get a bottle of beer, and she told them no. They also begged her for some wine, and she refused to sell them any and told them to get out and chased them out, and that Mrs. Cioppi did not serve them with any intoxicating liquor that afternoon and that they did not pay her any money. Nels Carline, who was only there a few minutes, testified that he did not see Mrs. Cioppi sell any liquor to them and did not see them pay her any money, and the daughter testified, in substance, the same as did Johnson. John Cioppi testified that he was not at home on that Sunday, either in the morning or in the afternoon, and that he did not take a pitcher on that day and go down-stairs "and get something in it and bring it up and set it on the table." He was corroborated in his testimony that he was not there on that day by his daughter. Nels Carline contradicts him in that particular, and testified that John Cioppi was there in the morning "working around there," but did not see him talk to the two men. Mrs. Cioppi did not testify as to whether he was there or not. She positively denied selling any drinks to the two investigators, and stated that she told them when they asked for drinks that her place was no place to get a drink and told them to get out, and that she took one of them by the coat and chased them out. None of these witnesses testified on the question of whether or not there were other men present when the two investigators were there on Sunday and claimed to buy drinks. Mrs. Cioppi did testify that the liquors seized by the officers and which were made exhibits in the case were owned by her and her husband, and that her husband was in the kitchen when the officers came and made the seizure. She further testified that she and her husband had a little beer in the house for their own use and for her husband to drink. She made no statement as to whether or not she had wine and white mule in the house and neither admitted nor denied that they did have such liquors there, except her statement that she and her husband owned the liquors in the exhibits.

The evidence in this record clearly supports the verdict and judgment, and this court would not be warranted in substituting its judgment for that of the jury or in reversing the judgment for any of the reasons urged by plaintiffs in error.   In fact, we are thoroughly satisfied from this record that both of the defendants are guilty as charged in the first count of the indictment, which properly and sufficiently charges them with the unlawful possession of intoxicating liquor for the purpose of sale without having a legal permit so to do.

It is contended by plaintiffs in error that the second count in the indictment does not sufficiently charge an offense against the Prohibition act.   It may be conceded that this count is insufficient, as alleged.   The verdict of the jury was that the defendants were guilty under both counts of the indictment.   The judgment and sentence of the court as to both of the defendants were within the limits of the penalty prescribed by the statute for the single offense charged in the first count.   Since the verdict did not refer to any particular count on which the finding of guilty was made but was a verdict of guilty on both counts, it may be treated as a general verdict of guilty.   Where there are one or more good counts in an indictment and the evidence supports the charge in the good count, the proof under a general verdict of guilty will be referred to the good count and the conviction sustained.   *People* v. *Jones,* 263 Ill. 564.

The indictment in the first count is substantially the same as the first count of the indictment held good in *People* v. *Tate,* 316 Ill. 52, the real difference being that in the indictment in the *Tate case* there was an allegation that the intoxicating liquor alleged to have been possessed for sale was fit for use for beverage purposes, while in this case the last named averment is not in the indictment.   We do not think this allegation is necessary to a good indictment under the Prohibition act.   This indictment uses the term

"intoxicating liquor" in such first count, and such liquor includes brandy, whiskey, rum, gin, beer, ale and wine, and in addition thereto any spirituous, vinous, malt or fermented liquor, liquids and compounds, whether medicated, proprietary, patented or not, and by whatever name called, containing one-half of one per cent or more of alcohol by volume, which are fit for use for beverage purposes as defined in section 2 of the act. Under such a definition, when a liquor is described as "intoxicating liquor" that designation signifies that it is "potable as a beverage," or "fit for beverage purposes." (*State* v. *Brown,* 186 N. W. 946, a decision of the Supreme Court of Minnesota.) That decision is supported by *State* v. *Hosmer,* 144 Minn. 342, 175 N. W. 683, holding, in substance, that when a liquid is described as "intoxicating liquor," that designation of it signifies that it is potable as a beverage or fit for beverage purposes, as liquor can intoxicate only when used as a beverage. See, also, to the same effect, *Commonwealth* v. *Louisville and Nashville Railroad Co.* (Ky.) 130 S. W. 798; *Heintz* v. *LePage,* (Me.) 62 Atl. 605.

Substantially the same questions as to the complaint for the search and seizure warrant, the warrant itself and the validity of the sections of the statute under which they were issued, were raised in the case of *People* v. *Zalapi,* 321 Ill. 484, and this court in that case held the complaint warrant, and the sections of the statute under which they were issued, were sufficient and valid and not subject to the objections made to them. For the same reasons therein given the court holds that the objections to the complaint for the search and seizure warrant and the warrant itself should be overruled, and that the liquors in question found in the first floor of the apartment aforesaid were properly allowed in evidence by the court. If we were to concede that the basement of the apartment building is not a part of the first floor thereof and that the search warrant gave no authority to search and seize any liquors in the base-

ment, still the holding of the court that the liquors found in the basement and offered in evidence should be admitted as evidence furnished no grounds for a reversal of this judgment. It would be merely technical error and not prejudicial error, as all of the liquors seized are a portion of the same liquors, moonshine whiskey, beer and wine that were found by the officers in both the basement and in the kitchen by some of the witnesses in this case, and it is clearly proven that two of these liquors,—moonshine whiskey and wine,—were sold and drunk upon the premises on November 29, three days before the seizure. It was not error for the court to admit evidence of these sales, as they were, as held by the court, evidence of the intent with which the liquor was possessed,—that is, evidence of intent to sell the same. The judgment should not be reversed simply because the search of the basement was made by the officers and wine and beer therein were seized and put in evidence, when the evidence shows, also, that wine and whiskey and beer were possessed and found in the kitchen of the apartment house and that wine and whiskey were therein sold.

Some complaint is justly made at some of the instructions offered by the People in this case. The instructions on both sides were very inaccurate and improper, whole clauses and sentences being quoted or referred to which are found in the Prohibition act, some of which have no place in an instruction. We think that the defendants were not prejudiced and are not entitled to have the judgment reversed on account of the instructions.

The judgment of the court is affirmed.

*Judgment affirmed.*