COMMONWEALTH *vs.* MIGUEL PELLIER
(and five companion cases [1]).

Suffolk.   October 2, 1972. — November 17, 1972.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & KAPLAN, JJ.

*Search and Seizure.   Probable Cause.   Arrest.*

An affidavit supporting an application for a search warrant by a Boston police officer to a Boston court was not defective in that Boston was omitted in stating the address of premises involved

---

[1] Of the companion cases one is against Miguel Pellier and four are against Fernando B. Solorzano.

[624–625]; nor was the affidavit insufficient with respect to a certain informant who was an eyewitness of material occurrences and as to whom reasons were set out for considering him to be reliable [625].

A loaded revolver, which was not covered by a firearm identification card and whose serial number was obliterated, found in an apartment by police officers executing a search warrant of the apartment for heroin was lawfully seized as contraband. [624, 625]

On the record, where an informant had told police of a trip of an automobile for the purpose of purchasing heroin, there was probable cause for arrest of an occupant of the automobile for narcotic violations upon return of the automobile from the trip, so that a search of his person then made and seizure of a bag of heroin found in the search were legal. [625–626]

INDICTMENTS found and returned in the Superior Court on April 7 and 13, 1971.

Motions to suppress were heard by *Goldberg*, J., and the cases were tried before him.

The cases were submitted on briefs.

*Edelmiro Martinez, Jr.*, for the defendants.

*Garrett H. Byrne*, District Attorney & *Alfred E. Saggese, Jr.*, for the Commonwealth.

KAPLAN, J.   The defendants Solorzano and Pellier were convicted of unlawful possession of heroin and possession with intent to sell; Solorzano was convicted in addition of defacing the serial number of a firearm and of possession of a firearm without obtaining a firearm identification card.   The questions on this appeal are framed by assignments of error with respect to the judge's denial before trial of motions to suppress the products of police searches (and his incidental exclusion of certain questions put to a police officer), and his denial of motions for directed verdicts at the close of the Commonwealth's case.

On February 3, 1971, Officer Shepard of the Boston drug control unit applied to the Municipal Court of the Roxbury District for a search warrant on the basis of information furnished by an informant.   Shephard's affidavit stated that the informant had proved reliable in connection with a number of narcotic drug arrests within the past six months in the basement of 853 Beacon

Street (naming the persons). The informant had in the past ten days or so met one Fernando (describing him) at apartment 8 at that address and while there observed three sales of heroin (describing them) at $120 a bundle in which Fernando participated. The affidavit stated also that officers of the drug control unit had seen persons entering and leaving the building, some known to have been arrested as drug law violators, some known as associates of drug addicts. A warrant issued on February 3 commanding search of the person of Fernando and of apartment 8 for heroin and implements of the trade, as well as search of any persons present who might be found to have such material in their possession.

On the same day Officer Shepard applied by affidavit for another search warrant, this one covering one Moise and apartment B–1 in the basement at the same address. The informant was qualified as reliable by reference to the same arrests. He had informed the officer that while in apartment B–1 during the past ten days he met Moise (describing him) and his wife and observed a large quantity of heroin, approximately two ounces, stated by Moise to be pure; that Moise said he intended to cut it twelve to one and sell it at $125 a bundle. The informant further said that Moise had driven to New York city earlier that week (meaning the week of January 31) in his maroon Chevrolet automobile to make a contact and buy a quantity of pure heroin for $2,000; that Moise was in the drug traffic with his brother Fernando who lived in apartment 8.

On the motion to suppress, Officer Shepard testified, more particularly, that the informant had told him about the New York trip two or three days before he applied for the warrant and had stated that the car in question bore Massachusetts registration plates with the last digits "18H," and that there were two men in the car, one called Solorzano. He saw the informant again in the late afternoon of February 3, a few hours after receiving the warrants; the informant now told him that the car was on the way back to Boston with the heroin, and that there

was a small amount of heroin at the Beacon Street address. Some time before February 3 Officer Shepard evidently knew there were two Solorzanos in the house and connected that name with Fernando and Moise.

Shepard with other officers had the building under surveillance. At about 10 P.M. on February 3 a car answering the description (registration number 992–18H) with two occupants drove up. The police came forward and asked the men their names and addresses.[2] They identified themselves as Fernando Solorzano and Miguel Pellier of apartment 8 at the Beacon Street address. They were placed under arrest for narcotic violations and taken to apartment B–1. There they were searched. A bag with white powder, later shown to be about one and one-half ounces of heroin, was found on Pellier. Meanwhile officers entered and searched apartment 8. They found heroin and implements of the trade. In the course of the search a loaded .45 caliber automatic pistol with an additional clip was found on a bed under the pillow. The serial number of the weapon had been obliterated. The defendant Solorzano had no firearm identification card.

1. There was no error in the refusal to suppress the material seized in apartment 8. Regardless of the legality of the arrests (to which we return), the first warrant legalized the search for heroin and related things in apartment 8. *Commonwealth* v. *Glavin*, 354 Mass. 69, 71–72. *Wong Sun* v. *United States*, 371 U. S. 471, 484–487, 491. It is contended that the warrant was bad because the affidavit supporting it, while giving the street address, omitted the city, Boston. This is a triviality. The specimen affidavit at G. L. c. 276, § 2B, as amended through St. 1965, c. 384, does indeed call for identification of the premises to be searched but the point of the affidavit, after all, is practical, not formal, to furnish a proper basis for issuing the warrant, see *Commonwealth*

---

[2] As to this threshold questioning, see G. L. c. 41, § 98; *Commonwealth* v. *Wilson*, 360 Mass. 557, 558–560, and authorities cited; and *Adams* v. *Williams*, 407 U. S. 143, 145–147.

v. *Monosson,* 351 Mass. 327, 330, and here the affidavit bespeaks Boston as though it had been named; these were Boston police and this was a Boston court, and the warrant issued did in fact give the address as in Boston. A conveyancer's precision of language is not to be expected in the affidavit. *United States* v. *Ventresca,* 380 U. S. 102, 108–109. *Commonwealth* v. *Mele,* 358 Mass. 225, 228–229. *Commonwealth* v. *Stewart,* 358 Mass. 747, 750. *Commonwealth* v. *Perada,* 359 Mass. 147, 149. It is also argued that the substance of the affidavit was too general or conclusory to justify the warrant. This is not the impression the affidavit makes on us. The informant is an eyewitness of the occurrences and he describes them as an eyewitness might; and reasons are fairly set out for considering the informant to be reliable. *Commonwealth* v. *Causey,* 356 Mass. 125, 127. *Commonwealth* v. *Stewart,* 358 Mass. 747, 750–752. *Commonwealth* v. *Stevens,* 361 Mass. 868. Cf. *Aguilar* v. *Texas,* 378 U. S. 108, 110–115; *Spinelli* v. *United States,* 393 U. S. 410, 417; *United States* v. *Harris,* 403 U. S. 573. To be weighed with the rest are the observations of the building by the police themselves. As to the pistol, not mentioned in the warrant, it was contraband discovered in the natural course of a lawful search, and could be seized. *Coolidge* v. *New Hampshire,* 403 U. S. 443, 464–471, and authorities cited. *Commonwealth* v. *Wojcik,* 358 Mass. 623, 628.

2. To convict Pellier it might possibly have sufficed for the Commonwealth to introduce only the material seized in apartment 8; but it went further and introduced the bag of heroin found on his person. As it is not possible to say that the jury were unaffected by this evidence, the conviction of Pellier, at least, depends on the legality of this search. The "persons present" clause of the first search warrant should not be held to cover Pellier.[3]

---

[3] The warrant in terms authorized search of "any person or persons present who may be found to have such property in his her or their possession or under his her or their control or to whom such property may have been delivered." This lacks specificity and is of dubious meaning.

Rather we conclude, though the judgment involved is not altogether an easy one on the facts, that the search was lawful because it was incident to a lawful arrest. There was probably no adequate basis for arresting Solorzano, and surely none for arresting Pellier, up to the arrival of the car at 10 P.M. That occurrence, however, together with the answers given by the defendants at the time, consolidated and confirmed the information already received by the police, and in our view the combination justified the arrest of Pellier together with Solorzano. Fernando and Moise are not to be treated as fungible; but the fact that the Solorzano in the car was Fernando rather than Moise is not very significant for the present purpose because the brothers had been tied together in the second affidavit. Pellier was vulnerable to arrest because, though not previously known by name, he fitted into the event as it was foretold and as it happened. Cf. *Commonwealth* v. *Brown*, 354 Mass. 337; *Commonwealth* v. *Breen*, 357 Mass. 441, 444–446; *Draper* v. *United States*, 358 U. S. 307. "Probable cause" for arrest means reasonable cause for the officer's belief that the person about to be arrested is guilty of crime, and the belief is reasonable when it rests on an objective or concrete, substantial basis as contrasted with mere subjective suspicion. Compare *Brinegar* v. *United States*, 338 U. S. 160, 173, 175–176, with *Henry* v. *United States*, 361 U. S. 98; see *Commonwealth* v. *Stewart*, 358 Mass. 747, 749, and authorities cited; cf. Am. Law Inst., A Model Code of Pre-Arraignment Procedure, § 120.1 (Official Draft No. 1, 1972). Here, we think, there was a sufficient basis for holding Pellier rather than letting him go at large.[4]

3. The Commonwealth's proof at the trial was ample to support the charges and the defendants' claim of error

---

[4] The judge on the motion to suppress excluded certain questions put to Officer Shepard intended to show that the information concerning the car and its occupants and the trip to New York and return rested initially only on the informant's statements. That this was the case was evidently assumed by the judge, and hardly required elaboration. See *Draper* v. *United States*, 358 U. S. 307, 312–313.

in the judge's denial of motions for directed verdicts was actually aimed at the judge's alleged refusal to permit counsel to argue in support of the motions (this grievance is not pitched at a constitutional level). The transcript shows a submission and denial of the motions. It does not show a request to argue or a refusal. Accordingly the point is not available for review.

*Judgments affirmed.*