THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* JOHN LEE GIFFORD *et al.*, Defendants.—(JOHN LEE GIFFORD, Defendant-Appellee.)

(No. 12510;

Fourth District—March 20, 1975.

Basil G. Greanias, State's Attorney, of Decatur (Jerry Finney, Assistant State's Attorney, of counsel), for the People.

Reno, O'Byrne & Kepley, of Champaign (Donald M. Reno, Jr., and Edward H. Rawles, of counsel), for appellee.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

On November 13, 1973, a judge of the circuit court of Macon County issued a warrant for the search of a certain premises referred to as "The Adult Book and Cinema Shop" at a specified location in Decatur, Illinois. The warrant was based upon a complaint for a search warrant filed by one Donald Brooks and six supplemental complaints by various and sundry persons. The warrant commanded the search of the premises and return to the court of "any and all of the following instruments, articles or things which have been used in the commission of, or constitute evidence in, the offense of OBSCENITY, to wit: Any and all patently obscene magazines, books, movies, Movie Arcade Machines, newspapers, paperback novels, all material patently obscene, plastic or rubber vaginas, and any and all paraphernalia displayed in said store which appears to be obscene." Armed with this writ, a search was made of the premises and various and sundry items were seized, an inventory of which indicates some 246 newspapers, 1083 magazines, 1671 books, 207 individual pieces of assorted sexual paraphernalia, 4 boxes containing assorted sexual paraphernalia, 36 films, 29 projectors, and 11 calendars. The record indicates that this seizure included practically the entire contents of the store and that the search and seizure lasted some 3 to 4 hours.

On November 14, the day following the issuance and execution of the search warrant, a motion was filed to quash the warrant; hearing was held on the motion; and ultimately the motion was allowed. The court entered an order quashing the search warrant and further ordered the seized property returned. We affirm.

The search warrant issued in this case is patently overbroad and unconstitutional, general in nature, and the trial court was clearly mandated to quash the warrant and order the return of the seized items.

In *People v. Kimmel,* 34 Ill.2d 578, 217 N.E.2d 785, a complainant alleged in his complaint for a search warrant that he purchased four obscene books from defendant's bookstore and attached the books as exhibits to the complaint for the warrant. The trial court found the books to be obscene and issued a warrant authorizing seizure *only* of all copies of these books that might be found in the defendant's store. In the execution of this specific warrant, the officers seized nearly 1500

books and magazines other than those specifically described. In passing upon the validity of that action, the court reversed the convictions relating to the possession of the books not named in the search warrant and said:

"In the case before us the officers who searched the defendant's store did not have a general warrant, but they treated the warrant that they had as a license for a general search, and they took advantage of their presence in the bookstore to ferret out and seize whatever they considered to be contraband." (34 Ill.2d 578, 582, 217 N.E.2d 785, 787.)

In *Kimmel,* the court noted that while the warrant was specific, the search was general and the result was one of suppression rather than legitimate action in obtaining evidence. In this case, the warrant as originally issued is general in nature, obviously invalid, and an invitation to a sweeping search and seizure as a general warrant. In *Kimmel,* the Illinois Supreme Court quoted with approval the language of Mr. Justice Stewart in *Stanford v. State of Texas,* 379 U.S. 476, 13 L.Ed.2d 431, 85 S.Ct. 506. That quoted language is most appropriate here:

"'Vivid in the memory of the newly independent Americans,' the opinion stated, 'were those general warrants known as writs of assistance under which officers of the Crown had so bedeviled the colonists. \* \* \* They were denounced by James Otis as "the worst instrument of arbitrary power, the most destructive of English liberty, and the fundamental principles of law, that ever was found in an English law book," because they placed "the liberty of every man in the hands of every petty officer."' (379 U.S. at 481.) The court observed that the roots of the fourth amendment went deeper than the colonists' opposition to writs of assistance. General warrants had been used 'as instruments of oppression from the time of the Tudors, through the Star Chamber, the Long Parliament, the Restoration, and beyond.'

'What is significant to note,' the opinion continued, 'is that this history is largely a history of conflict between the Crown and the press. It was in enforcing the laws licensing the publication of literature and, later, in prosecutions for seditious libel that general warrants were systematically used in the sixteenth, seventeenth, and eighteenth centuries. \* \* \* It was in the context of the latter kinds of general warrants that the battle for individual liberty and privacy was finally won—in the landmark cases of *Wilkes v. Wood* [19 How. St. Tr. 1153 (1763)] and *Entick v. Carrington* [19 How. St. Tr. 1029 (1765)].' 379 U.S. at 482-83." 34 Ill.2d 578, 581-82, 217 N.E.2d 785, 787.

The order of the circuit court of Macon County quashing the warrant and ordering return of the items thus seized was correct and is affirmed.

Judgment affirmed.

SIMKINS, P. J., and TRAPP, J., concur.