THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* FELIPE FRAGOSO *et al.*, Defendants-Appellees.

First District (4th Division)    Nos. 78-1433, 78-1879 cons.

Opinion filed January 18, 1979.

---

* Justice Buckley participated in this decision while assigned to the Illinois Appellate Court, First District.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Joan S. Cherry, Assistant State's Attorneys, of counsel), for appellant.

Sam Adam, Edward M. Genson, and John R. De Leon, all of Chicago (Marvin I. Bloom, of counsel), for appellees.

Mr. JUSTICE ROMITI delivered the opinion of the court:

This is a State appeal, pursuant to Supreme Court Rule 604(a)(1) (Ill. Rev. Stat. 1977, ch. 110A, par. 604(a)(1)), of a trial court order quashing a search warrant and suppressing evidence obtained by the execution of that warrant. We must determine whether that warrant described with

sufficient particularity the place to be searched and the things to be seized.

The affidavit in the complaint for the search warrant states:

"I, Off. Thomas West #4573, a Police Officer in the City of Chicago and currently assigned to the Gang Crimes Investigations Division/South, had occasion [sic] to converse with a confidential and reliable informant regarding the illegal sale of heroin within the City of Chicago. During the course of the first conversation which took place on 4 Apr 78 the informant related that earlier in the day the informant had been with a male Mexican known to him as Felipe Fragoso and they had met in a tavern in the vicinity of Division and Ashland. He further related that upon meeting with Fragoso he had purchased an ounce of heroin from Fragoso for the price of $650.00 USC as they had arranged previously by telephone. During the course of this conversation the informant had explained that Fragoso had recently returned from Mexico with a shipment of heroin and that he was currently staying with his girl freind [sic] in her first floor apartment at 3445 W. Diversy [sic] and that her name was Julie [sic] Garcia. The informant further stated that Fragoso has whatever amount of heroin the informant needed for at least the next several weeks.

As a result of the information received an investigation was initiated and a fixed and rolling surveillance was conducted during the period of 4 to 6 Apr 78. A check of the utilities for the first floor of 3445 W. Diversy [sic] showed that the subscriber was one Julie [sic] Garcia. Further during the course of the surveillances Felipe Fragoso was observed to enter and leave the location on numerous occassions [sic] and was recognized by members of the investigative team from previous investigations. On seven (7) seperate [sic] occassions [sic] Fragoso was observed meeting with, or receiving at the door of the apartment located at 3445 W. Diversy [sic], known narcotics traffickers while he was under surveillance. On two (2) occassions [sic] Fragoso was seen accepting monies from traffickers of heroin and handing them objects in return.

On 6 Apr 78 during the early evening hours the Investigative team was again contacted by this same confidential informant who related that he had just met with Fragoso at the first floor apartment at 3445 W. Diversy [sic] and while there he purchased two (2) ounces of heroin from Fragoso. He stated that Fragoso had entered the kitchen of the apartment and returned to the frontroom with a large plastic bag containing numerous smaller bags of heroin. At this time Fragoso removed two of the bags and

returned the larger bag into the kitchen. When asked how he knew this substance to be heroin the informant related that he snorted (inhaled) a portion of one of the bags and received a familiar reaction that he has received from heroin in the past.

I, Off. Thomas West, have known this informant for the last three and one-half years. During this time this informant has supplied information on numerous occassions [sic] relative to violations of the narcotics laws of the State of Illinois. On the last five occassions [sic] that information has been supplied by this informant at least one arrest has been effected and contraband has been recovered on each occassion [sic]. This contraband was submitted and analyzed by qualified chemists of the Chicago Police Department and found to be narcotic substances on each of these occassions [sic].

As a result of the information received and the subsequent investigation, I, Off. Thomas West, believe that heroin can now be found at the location of 3445 W. Diversy [sic], first floor aparment [sic] under the control of a male mexican known as Felipe Fragoso."

The affidavit was signed by Officer West. The search warrant authorized a search of "Felipe Fragoso M/Mex. and his temporary residence at 3445 W. Diversy [sic], 1st fl. apartment" and the seizure of "Heroin, a narcotic drug, and all other narcotic drugs, narcotics paraphernalia and instrumentalities used in the furtherance of the offense", that offense being "Illegal Possession of a Controlled Substance (Heroin)."

No testimony was adduced at the hearing on defendants' motion, but there was a stipulation between the parties to certain facts alleged in that motion. In pertinent part the stipulated facts were that on April 7, 1978, in the early morning hours, police officers entered defendant Julia Garcia's home at 3445 West Diversey, Chicago, Illinois, searched that home, and seized certain private papers and a quantity of powder. The search and seizure was pursuant to the search warrant at issue.

At the conclusion of the arguments of counsel, the trial judge stated:
"I am again examining the complaint for search warrant and in the complaint for search warrant 3445 West Diversey, first floor apartment, is set forth six times and nowhere in the complaint for search warrant does 3445 West Diversey, is it stated to be or referred to as being in Chicago, Cook County, Illinois.

3445 West Diversey is set forth once in the search warrant and nowhere in the search warrant does it say or refer to it as being in Chicago, Cook County, Illinois.

I put the question earlier, and I don't know of any case where

from any jurisdiction that upholds the validity of a warrant where the city, the county or the State is not referred to in it as giving a location to be searched.

The Constitution requires that the premises be particularly described and in the absence of the county, city or State being stated, I find and hold that it is not particularly described as is constitutionally required.

I also hold and find that the complaint for the search warrant and the search warrant demanding the seizure of the narcotic paraphernalia and instrumentalities used in the furtherance of the offense, in my judgment do not authorize anyone to search the house for private papers, receipts, documents and for the reasons stated by me as well as the reasons stated in the complaint on the motion, I will sustain the motion to quash the search warrant and suppress the evidence."

## I.

■■ ■ The purpose of the requirement of particularity of description in search warrants is to prevent the use of general warrants, which would give the police broad discretion as to where they may search and what they may seize. (*Warden v. Hayden* (1967), 387 U.S. 294, 18 L. Ed. 2d 782, 87 S. Ct. 1642; *Marron v. United States* (1927), 275 U.S. 192, 72 L. Ed. 231, 48 S. Ct. 74.) Given this reason for the requirement, our courts have determined that a warrant is sufficiently descriptive of the premises to be searched if it enables the police, with reasonable effort, to identify the place intended. *Steele v. United States* (1925), 267 U.S. 498, 69 L. Ed. 757, 45 S. Ct. 414; *People v. Watson* (1962), 26 Ill. 2d 203, 186 N.E.2d 326; *People v. Moore* (1970), 124 Ill. App. 2d 204, 260 N.E.2d 255.

Errors in addresses, and, indeed, omissions as to portions of addresses are not *per se* fatal to the validity of a warrant. Thus in *People v. Watson* (1962), 26 Ill. 2d 203, 186 N.E.2d 326, a search was upheld even though the warrant incorrectly described the street address of the apartment to be searched as 2300 S. State when it was actually 2310 S. State. The court looked to other information available to the officer executing the warrant, namely that the building was on the southwest corner of 23rd and State, and concluded that the warrant was sufficiently specific in its description to allow identification of the place to be searched. In *People v. Hicks* (1977), 49 Ill. App. 3d 421, 364 N.E.2d 440, no street number was given for a hotel in which certain rooms were to be searched, but the address was given as the Arlington Park Towers Hotel, Euclid and Rawhling Roads, Arlington Heights, Cook County, Illinois. This court held the warrant valid, noting that there was no evidence to show that another hotel by that name existed at that intersection, so that

no mistake as to the hotel to be searched was possible. And in *People v. Mecca* (1971), 132 Ill. App. 2d 612, 270 N.E.2d 456, the warrant specified the street address as 3322 South Western Boulevard, the search was conducted at 3322 South Western Avenue. The court found the warrant to be sufficiently specific, noting that Western Boulevard was separated from Western Avenue by a 52 foot parkway, there was no such address as 3322 South Western Boulevard, and a description in the affidavit for the warrant matched that of the house searched.

■ As we have noted, one factor considered in *Mecca* was the information in the affidavit for the search warrant. Reference to this document as a factor in determining the validity of a search warrant is clearly permissible where the affidavit is attached to the warrant, incorporated by reference, or as is the case here, where the officer who signed and swore to the affidavit also executed the search warrant.[1] (*People v. Redmond* (1976), 43 Ill. App. 3d 682, 357 N.E.2d 204; *People v. Staes* (1968), 92 Ill. App. 2d 156, 235 N.E.2d 882.) Defendants have at no time challenged the validity of using the affidavit to determine whether the warrant was sufficiently specific, and the trial court did consider that document in making its determination. But defendants contend that the omission of the city and county from the warrant, and failure to link the city and county to the Diversey street address contained in the affidavit render it defective and unenforceable.

■ Our examination of the case law persuades us that no hard and fast rule is to be applied to every search warrant which omits the city and county involved. Rather, the determination to be made is whether in view of all of the relevant facts that omission operated to cause any ambiguity or confusion. Thus in *People v. Kissinger* (1975), 26 Ill. App. 3d 260, 325 N.E.2d 28, a search warrant was issued for 2028 Highview Road, Tazewell County, Illinois. The court upheld the warrant, noting that defendant had testified that she knew of no other Highview Road in the county, and although the sheriff had testified that there might be another such road, there was no finding by the court that another one existed. In *Chiaravalloti v. United States* (7th Cir. 1932), 60 F.2d 192, a warrant was issued for 4807 West 22nd Street, Chicago, whereas the warrant was executed at that address in Cicero. The warrant was upheld based on evidence that the same street ran through both towns, ending in Chicago at 4800; a Chicago Post Office employee testified there was no such address as 4807 West 22nd Street in Chicago and mail for that address would have been delivered to the Cicero location; and the affidavit and warrant described the premises accurately. Similarly in *Rose v. United*

---

[1] Officer West's participation in the execution of the warrant was not part of the stipulation of facts below but the arrest reports of the defendants, made part of the record on appeal, establish his participation and defendants do not contest this fact.

*States* (8th Cir. 1930), 45 F.2d 459, a street address listed as being in Omaha, Nebraska, which was in fact just across the city line was held not to invalidate a warrant. The court stated:

"Though the description was not technically accurate, yet it was sufficient to direct the officer to the exact place intended to be searched, and was also sufficient to prevent a mere roving expedition. No question of venue or jurisdiction was involved, and no one was misled. We think the description was sufficient. [Citations.]" (45 F.2d 459, 461.)

Defendants have cited to this court, as they did in the trial court, the case of *Helton v. State* (1957), 164 Tex. Crim. 488, 300 S.W.2d 87, in which a description giving the street address and the county, as well as the name of the owner and occupier of the premises was held defective for lack of specificity. The court in that case relied on a rule which focused on whether the description was as specific as it could possibly have been, rather than whether there was any possibility for confusion. We have noted the different rule used in Illinois, and indeed *Helton* has not been followed in Texas either. *Ex Parte Flores* (Tex. Crim. App. 1970), 452 S.W. 2d 443; see *Johnson v. State* (Tex. Crim. App. 1971), 469 S.W. 2d 581.

The courts of some jurisdictions have also looked to the realities of where search warrants were secured, who issued them, and who executed them. Thus in *Commonwealth v. Pellier* (1972), 362 Mass. 621, 289 N.E.2d 892, a warrant was attacked because, although it specified that the address to be searched was in Boston, the affidavit used to secure the warrant did not specify any city. The court upheld the warrant, stating:

"This is a triviality. * * * [T]he point of the affidavit, after all, is practical, not formal, to furnish a proper basis for issuing the warrant * * * and here the affidavit bespeaks Boston as though it had been named; these were Boston police and this was a Boston court, and the warrant issued did in fact give the address as in Boston. A conveyancer's precision of language is not to be expected in the affidavit. [Citations.]" (362 Mass. 621, 624-25, 289 N.E.2d 892, 894.)

Similarly in *Armstrong v. State* (1924), 150 Tenn. 416, 265 S.W. 672, where only a street address was given, the court noted that the heading of the warrant indicated the City of Knoxville was involved and it further noted that the municipal judge who signed the warrant had authority only in Knoxville. For these reasons the warrant was upheld. (Also see *Bragg v. State* (1927), 155 Tenn. 20, 290 S.W. 1.) And in *Anderson v. State* (1927), 192 Wis. 352, 212 N.W. 628, a warrant which did state the village at issue was attacked because the complaint for the warrant did not do so. The court noted that the complaint was brought before the justice of the peace

of the village and on that basis found the complaint to be sufficiently specific to support the warrant.

It is true that in Illinois police officers may execute search warrants anywhere in the State, not just within their own jurisdiction. (*People v. Carnivale* (1975), 61 Ill. 2d 57, 329 N.E.2d 193.) Clearly, the effect of this is to negate any presumption that a warrant issued in Chicago at the request of Chicago police must have been intended for use in the city. But these factors still may be taken into account, in conjunction with other facts, in determining whether there was a reasonable possibility of confusion or even discretion in executing this warrant.

An examination of the facts of this case, in the light of the cases we have examined, persuades us that there was no confusion, no possibility of error, no room for discretion, in determining where this warrant should have been served. The complaint for a search warrant was brought by a Chicago police officer. In his affidavit he related that he had spoken to an informant about the illegal sale of heroin *within the city of Chicago.* He learned the informant had purchased heroin from Fragoso earlier that day in a tavern near Division and Ashland. That address is not identified directly in the affidavit as being in Chicago, but because of the earlier statement in the affidavit indicating that the sale took place in Chicago, the location is as clear as if it had been expressly indicated. The officer also learned that Fragoso was staying with Julie (*sic*) Garcia in her first floor apartment at 3445 West Diversey. Officer West or another participant in the investigation verified that the utilities subscriber for that address was Garcia. Members of West's investigative team also placed the apartment under surveillance and observed Fragoso meeting and making sales to individuals at 3445 West Diversey. Finally, the informant contacted the investigative team and told them he had just purchased heroin from Fragoso at 3445 West Diversey. Based on this information, contained in Officer West's affidavit, a search warrant was issued by a Cook County judge and was executed by Officer West and other Chicago police officers at 3445 West Diversey in Chicago. The stipulation at the hearing establishes that this was in fact the home of Julia Garcia. There is no evidence, nor have defendants asserted, that there was any actual confusion as to the place for execution of the warrant. Nor was there any reasonable possibility of such confusion since Officer West, a member of the investigative team which had placed the apartment under surveillance and verified that Garcia lived there, also participated in the execution of the warrant. Defendants had the burden of establishing the lack of particularity of description in the warrant, yet they have never attempted to establish the existence of another 3445 West Diversey in Chicago, in Cook County, or, indeed, anywhere in the State. Furthermore, even

assuming the existence of another such address in the State, under the totality of fact and circumstances of this case there was no reasonable possibility that officers involved in the investigation here would have attempted a search of that other address or that they would have enlisted the aid of officers in the vicinity of that other address so as to search it. Search warrants are not to be suppressed for technical deficiencies which did not in fact prevent the officers executing them from ascertaining with particularity and precision the place to be searched. (Ill. Rev. Stat. 1977, ch. 38, par. 108—14; *People v. Mecca* (1971), 132 Ill. App. 2d 612, 270 N.E.2d 456.) We find that the failure to specify the city of Chicago in the warrant was, under the circumstances of this case, a technical deficiency which created no reasonable possibility of confusion. Accordingly the search warrant should not have been quashed on that ground.

## II.

As we have noted, the warrant specified that the items to be seized were "Heroin, a narcotic drug, and all other narcotic drugs, narcotics paraphernalia and instrumentalities used in furtherance of the offense", that offense being illegal possession of heroin. However, when the warrant was executed among the items seized were certain personal papers. The record is not entirely clear on the matter, but at the hearing on defendants' motion the State represented to the court that these papers consisted of an envelope and "maybe one other paper," and would be used to establish that defendant Fragoso was known by other names and had "attempted to cover his true identity." Even assuming the papers would have this utility, there has been no showing that they were in fact "instrumentalities used in furtherance of the offense." Because these papers were not shown to be within the particular description of the warrant, they were improperly seized and should have been suppressed. (See *People v. Kimmel* (1966), 34 Ill. 2d 578, 217 N.E.2d 785; *People v. Gifford* (1975), 26 Ill. App. 3d 272, 325 N.E.2d 81.) This suppression does not of course invalidate the seizure of the other items, for which no complaint of lack of specificity of description has been advanced. *People v. Cioppi* (1926), 322 Ill. 353, 153 N.E. 604; see *People v. Russell* (1977), 45 Ill. App. 3d 961, 360 N.E.2d 515.

Accordingly the order of the trial court is affirmed insofar as it suppressed the papers seized, but that order is reversed as to the quashing of the search warrant and suppression of the remaining items.

Affirmed in part; reversed in part; remanded for further proceedings.

JOHNSON and LINN, JJ., concur.