THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALAN HIRSCH, Defendant-Appellant.

First District (6th Division)   No. 1—90—1574

Opinion filed October 25, 1991.

George Patrick Lynch, Ltd., and Kielian & Walther, both of Chicago (George P. Lynch and M. Jacqueline Walther, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Howard D. Weisman, and Christine Cook, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNAMARA delivered the opinion of the court:

Following a bench trial, defendant, Alan Hirsch, was found guilty of possession of child pornography and was sentenced to one year's conditional probation terminable upon payment of a $1,000 fine. Defendant appeals, contending that the charging indictment was vague and uncertain; that the court erred in allowing the State to amend the indictment on the morning of trial; that the search warrant failed to state with specificity the items to be seized; that defense counsel was denied the opportunity to present a closing argument; that the indictment as presented to the grand jury was improper; and that the outrageous conduct of government agents which led to his alleged participation in the undercover operation gave rise to a violation of due process.

Defendant, age 45, has been employed as a senior technician consultant for Amoco Oil Company since 1973. He has no prior convictions. In 1986, the United States Customs Service conducted an undercover operation in the Chicago area designed to entice individuals previously identified as possessing child pornography to purchase illegal items. Toward this end, the Customs Service set up a fictitious company named "L. Gagnon," based out of Ontario, Canada. L. Gagnon mailed out advertisements to a limited number of individuals, including defendant, to solicit sales of pictures and books of boys and girls engaged in sex acts.

On July 29, 1986, defendant responded to this advertisement by ordering a set of photographs entitled "Kurt and Andre" described as "Kurt, 11 and Andre 12, teach each other about oral love." Defendant also ordered 31 volumes of magazines entitled "Superboy," "Dreamboy," "Joyboy," and "Wonderboy," and included a money order for $605 with his order.

In October 1986, the investigating agent, Tom Fischer, sent a sealed package containing the "Kurt and Andre" photographs to Ca-

nadian Customs Service. That sealed package was returned to him in the same condition on December 5, 1986. On December 16, 1986, at approximately 7:30 a.m., Fischer, posing as a DHL courier, drove to defendant's apartment complex. Fischer identified himself as a courier to the security guard, who rang the bell to defendant's apartment. Defendant came to the lobby, where Fischer was waiting, and signed for the package containing the "Kurt and Andre" photos. Fischer recognized defendant from photographs which matched the person to whom he delivered the package. Fischer contacted Customs Service Special Agent John O'Malley and informed him that a controlled delivery had been made.

Later that day, O'Malley executed an affidavit in support of his search warrant, which stated that the Foreign Mail Facility had cause, during routine examination of parcels travelling in international commerce, to inspect several parcels addressed to defendant at his post office box in Chicago. Specifically, the Customs Service seized five packages addressed to defendant in the previous year from June 24 through July 25, 1985.

Customs Service sent a form letter to defendant concerning two of the seizures, advising him that the importation of these materials was in violation of United States law. Defendant filed a claim in Federal district court in Illinois after civil forfeiture actions were instituted against those two seizures, arguing that the material was not obscene and was intended for his private use. O'Malley further stated that he was advised that defendant's claims in both instances were denied and that the magazines were found to violate 19 U.S.C. §1305 (1982).

The other three seizures were retained as evidence, and defendant was not notified that they had been seized. According to O'Malley's affidavit, these seizures also contained magazines which depicted explicit sexual activities between young teen males.

On December 16, 1986, a Federal magistrate executed a search warrant to search defendant's work office and apartment. During the search of defendant's apartment, various items were recovered including 230 photographs, 87 magazines, and 20 videotapes. Of those items, 19 photographs and 12 magazines were later admitted into evidence.

On June 1, 1988, almost 18 months after defendant's apartment was searched, he was arrested and charged with possession of child pornography. Defendant filed a motion to quash the search warrant and to suppress evidence. After considering O'Malley's affidavit stating that contraband was intercepted en route to defendant's post of-

fice box in 1985, defendant's claim in district court contesting the forfeiture which was litigated and decided adversely to him, and his placement for an order of child pornography, the trial court denied defendant's motion.

The trial judge found that defendant responded to the government's solicitation by ordering child pornography and that the exhibits introduced by the State (which did not include the photos given to defendant during the undercover operation) found in his possession depicted individuals under age 18 engaged in acts of sexual contact in violation of section 11—20.1(a)(1)(ii) of the Criminal Code of 1961 (Code) (Ill. Rev. Stat. 1985, ch. 38, par. 11—20.1(a)(1)(ii)).

Defendant first contends that the indictment was vague and uncertain because the original indictment charged defendant with violating sections 11—20.1(a)(2)(ii), (a)(2)(vii) (Ill. Rev. Stat. 1985, ch. 38, pars. 11—20.1(a)(2)(ii), (a)(2)(vii)), and was subsequently amended on the morning of trial to charge sections 11—20.1(a)(1)(ii) and (a)(1)(vii). Defendant argues that he was not adequately apprised of the charges against him, as the indictment did not set forth the elements of the offense with sufficient specificity to apprise him of the precise conduct with which he was charged.

■ We find this argument to be without merit. The original indictment stated that defendant:

> "with knowledge of the nature and contents thereof, *possessed photos of a child* *** under 18 years of age *** engaged actually or simulation in any act of sexual contact involving the sex organ of another person, or which involved the mouth, anus or sex organs of the child and the sex organ of another person." (Emphasis added.)

The second count of the indictment charges that defendant:

> "*possessed photos of a child* *** under 18 years of age *** which depicted and portrayed in poses, postures, and settings involving lewd exhibition of the genitals of a child." (Emphasis added.)

Defendant argues that because the counts in the indictment give rise to a number of possible permutations, the State must explicitly define the details of the photographs constituting child pornography it expects to introduce at trial.

We find that a fair reading of the plain language of the indictment indicates that defendant was adequately informed of the nature of the charges against him sufficient to formulate his defense. Section 111—3 of the Code of Criminal Procedure of 1963 provides that a charging instrument must set forth "the nature and elements of the offense

charged." (Ill. Rev. Stat. 1985, ch. 38, par. 111—3(a)(3).) The sufficiency of an indictment is determined not by linguistic technicalities, but by the substance of the charge. *People v. Locascio* (1985), 137 Ill. App. 3d 201, 484 N.E.2d 451.

The indictment fairly apprised defendant of the charges against him, and it was not necessary for the State to identify in minute detail the subject matter of each individual photograph or magazine expected to be introduced at trial.

■■ Similarly, defendant's contention that the amendment to the indictment made on the morning of trial constitutes a material change fares no better. As previously discussed, review of the record indicates that the indictment originally charged defendant with violating sections 11—20.1(a)(2)(ii) and (a)(2)(vii) of the Code (Ill. Rev. Stat. 1985, ch. 38, pars. 11—20.1(a)(2)(ii), (a)(2)(vii)); however, those subsections do not exist under the statute cited. As noted by the trial judge, the amendment did not change the substance of the charge; rather, the section number was amended to conform with the pleadings. Formal defects in a charging document may be amended at any time if the change is not material or does not alter the nature and elements of the offense charged. (See Ill. Rev. Stat. 1985, ch. 38, par. 111—5; *People v. Payne* (1990), 194 Ill. App. 3d 238, 550 N.E.2d 1214; *People v. Troutt* (1977), 51 Ill. App. 3d 656, 661, 366 N.E.2d 370.) Moreover, it does not appear that defendant was unduly prejudiced by the amendment on the morning of trial, as the section originally cited makes explicit reference to the subsections set forth in the amended indictment.

Defendant next asserts that the items seized during the search of defendant's home should have been suppressed because of the lack of particularity of the search warrant. The warrant authorized the seizure of the following items:

"One (1) photo set entitled 'Kurt and Andre' and books, magazines, photographs, photocopies, negatives, films and video cassettes *depicting minors* engaged in sexually explicit conduct *** still cameras, audio and video cassette recorders, audio stereo sound playing, dubbing and recording material and devices, envelopes, letters and other correspondence *regarding children*, books, documents, and records reflecting the making, receipt or acknowledgement of orders to purchase or offers to sell or trade depictions of minors, address books, mailing lists, supplier lists, *** and all documents or records pertaining to the preparation, purchase or acquisition of customer or correspondents' names or lists, used in connection with the purchase,

sale, or trade of *sexually explicit depictions of minors.*" (Emphasis added.)

Defendant argues that this warrant resulted in a "general exploratory rummaging" by the officers, in which children's records, court documents, documents relating to organizations of which defendant was a member, personal diaries, address books, checking and bank records, as well as various magazines, video tapes, and film, were seized. At trial, the court found that the good-faith exception was applicable, and that although material was seized that was not contraband or even remotely related to the issue of child pornography, it did not constitute sufficient grounds to quash the search warrant.

■ We note that the search warrant was predicated upon recovering articles pertaining to child pornography, which clearly lies beyond the scope of first amendment protection. (*People v. Weber* (1990), 208 Ill. App. 3d 509, 567 N.E.2d 413.) Further, we find that the trial court properly applied the good-faith exception to the plethora of items inadvertently confiscated by the agents during the search of defendant's apartment, which of course, were never introduced at trial. An agent's reasonable and good-faith belief, although a mistaken one, that the searches were authorized under the warrants insulates the searches from a motion to suppress. (*People v. Stewart* (1984), 104 Ill. 2d 463, 473 N.E.2d 1227, citing *United States v. Leon* (1984), 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405.) Further, the improper seizure of items not within the purview of the warrant does not invalidate seizure of items for which no complaint of lack of specificity of description had been advanced. *People v. Fragoso* (1979), 68 Ill. App. 3d 428, 386 N.E.2d 409.

■ Defendant also maintains that his conviction should be reversed due to the failure of the trial court to afford him the opportunity to present a closing argument. Defendant correctly cites *People v. Moczarney* (1978), 65 Ill. App. 3d 410, 382 N.E.2d 544, for the proposition that failure to seek a closing argument will result in waiver, which is precisely what occurred in this instance. Review of the record reveals that defendant made no attempt to present a closing argument and is therefore deemed to have waived this right for purposes of review. The record also shows that when the trial judge questioned this issue at the hearings on defendant's post-trial motion, defense counsel did not indicate that he had ever requested closing argument; rather, he stated that the proceedings "just moved right along." Defendant was not deprived of the right to present closing argument.

Defendant further argues that the indictment should have been dismissed because the presentation to the grand jury consisted solely of an officer's monosyllabic answers to the prosecutor's leading questions, and the alleged pornographic materials were never displayed to the grand jurors.

In Illinois, there is a presumption that an indictment returned by a legally constituted grand jury is valid, and it is sufficient to justify a trial of the charge on the merits. (*People v. Whitlow* (1982), 89 Ill. 2d 322, 433 N.E.2d 629.) Ordinarily, the trial court does not consider grand jury proceedings or the evidence there presented, but may do so for limited purposes where a defendant has alleged there was no evidence presented to the grand jury connecting him to the offense for which an indictment was returned. *People v. Lightner* (1986), 145 Ill. App. 3d 741, 496 N.E.2d 269, citing *People v. Rodgers* (1982), 92 Ill. 2d 283, 442 N.E.2d 240.

█ In this case, sufficient evidence was presented to the grand jury to support the indictment. The State presented the testimony of Robert Thomas, an Illinois State Police officer assigned to the child exploitation unit, who participated in the investigation of defendant's apartment on December 16, 1988. At the grand jury proceeding, Thomas testified affirmatively that defendant possessed photos of children under the age of 18 engaged in acts of sexual contact. Defendant cites no case law, nor are we aware of any requirement that testimony before a grand jury cannot consist of monosyllabic responses, or that the physical evidence consisting of the child pornography seized from defendant's apartment need be presented to the grand jurors.

Defendant finally asserts that the conduct of law enforcement officials in this undercover operation, in which defendant was sent an advertisement to induce him to purchase items that were in contravention of the law and to bring about his arrest, constitutes outrageous governmental conduct thus depriving him of due process.

The defense of outrageous governmental conduct is premised upon the notion that the due process clause imposes limits upon how far the government can go in detecting crime regardless of the character of the target. (*United States v. Thoma* (7th Cir. 1984), 726 F.2d 1191.) Because the government may go a long way in concert with the investigated person without violating due process, the level of outrageousness needed to prove a due process violation "is quite high." Indeed, the government's behavior must shock the conscience of the court. *United States v. Jacobson* (8th Cir. 1990), 916 F.2d 467, 469, citing *Gunderson v. Schlueter* (8th Cir. 1990), 904 F.2d 407, 410-11.

In *United States v. Jacobson,* a factually similar case, the defendant's name was discovered on a pornographer's mailing list. The government mailed defendant two sexual attitude surveys, seven letters measuring his appetite for child pornography, and two sex catalogues over a period of 29 months. Jacobson responded with interest on eight occasions, and finally ordered obscene magazines and photographs depicting "young boys in sex action fun." Jacobson was found guilty, but his conviction was overturned by the Eighth Circuit Court of Appeals, with one justice dissenting. (*United States v. Jacobson* (8th Cir. 1990), 893 F.2d 999 (Fagg, J., dissenting).) In that decision, the majority concluded that prior to instituting an undercover operation aimed at Jacobson, the government had no evidence giving rise to a reasonable suspicion that Jacobson had committed a similar crime in the past, or was likely to commit such a crime in the future.

Upon reversal (899 F.2d 1549), and granting of petition for rehearing and suggestion for rehearing *en banc,* the Court of Appeals reversed the panel decision ((8th Cir. 1990), 916 F.2d 467 (Lay, C.J., dissenting, joined by Heaney, J.)). The *en banc* court affirmed Jacobson's trial court conviction, holding that the postal inspectors did not apply extraordinary pressure on Jacobson; rather, they merely invited him to purchase pornographic materials through the mail. Moreover, the court found that Jacobson could have easily ignored the contents of the mailings if he was uninterested in them, and that the government's investigatory conduct did not rise to the level of outrageous governmental conduct. See also *United States v. Kaminski* (7th Cir. 1983), 703 F.2d 1004 (the offer of reasonable inducements is a proper means of investigation).

This court recently addressed the issue of outrageous governmental conduct in the context of child pornography in *People v. Ewen* (1990), 194 Ill. App. 3d 404, 551 N.E.2d 426. In that case, the defendant, about 10 years before his arrest, had placed an advertisement in a California publication requesting nude photos of little children in "bold, revealing poses." The Illinois Department of State Police was informed about defendant's advertisement, whereupon two undercover letters were written to defendant under a fictitious name which included an order form for photographs of boys and girls in sex action. Defendant took the letters to the local police department, asking that it take appropriate action. Two detectives were sent to defendant's home to discuss his complaint, at which time one of the detectives produced a copy of the advertisement he had placed many years before in the California publication. A subsequent search of defendant's home uncovered magazines and photographs depicting

child pornography. Defendant was convicted of possession of child pornography, and on appeal, this court held that the participation and conduct of governmental agents were not outrageous.

■ We find the conduct of governmental agents in this undercover operation not to be outrageous, because reasonable suspicion existed to support the belief that defendant was predisposed to possess child pornography. Prior to the undercover operation, Customs Service had seized five parcels through international mails addressed to defendant's post office box. Defendant was advised that two of the seizures contained materials in violation of United States law; indeed, defendant even filed claims after civil forfeiture actions were instituted to recover those materials.

Approximately one year after the five seizures occurred, the Customs Service sent its only advertisement to defendant. He promptly responded by ordering a photo set entitled "Kurt, 11 and Andre 12, teach each other about oral love," which clearly contained child pornography. In addition, defendant ordered 31 other volumes of child pornography at a total cost of $605, thereby further evincing his intent to possess child pornography.

> "In seeking to detect and punish crime, law enforcement agencies frequently are required to resort to tactics which might be highly offensive in other contexts. Granting that a person is predisposed to commit an offense, we think that it may be safely said that investigative officers and agents may go a long way in concert with the individual in question without being deemed to have acted so outrageously as to violate due process or evoke the exercise by the courts of their supervisory powers so as to deny to the officers the fruits of their misconduct." *United States v. Kaminski*, 705 F.2d at 1009, citing *United States v. Quinn* (8th Cir. 1976), 543 F.2d 640.

We conclude, therefore, that the government's actions in sending defendant the advertisement for child pornographic materials after his demonstrated predisposition does not rise to the level of truly outrageous conduct.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

RAKOWSKI, P.J., and EGAN, J., concur.